Points Decided.

(June 2, 1924.)

MARY E. SYSTER, Appellant, v. WILLIAM C. HAZZARD, MUTUAL LIGHT, HEAT & POWER COMPANY, E. J. FINCH, Trustee, LOUISE HAZZARD and FARMERS' MUTUAL POWER COMPANY, a Corporation, Respondents.

[229 Pac. 1110.]

STATE ENGINEER'S PERMIT—WORK DONE UNDER ONE PERMIT APPLIED ON ANOTHER—ABANDONMENT—TITLE VESTED BY SHERIFF'S CERTIFICATE—CONFLICT OF EVIDENCE—TRESPASS—ESTOPPEL.

1. The holder of a State Engineer's permit to construct a power plant, which permit he had purchased together with the uncompleted work under a permit antedating his own, originally issued to a third party for the same purpose, immediately applied such work to his junior permit. *Held,* that, while such application was proper as an original expenditure under the junior permit, the senior permit was thereby abandoned.

2. Where the record discloses a substantial conflict in the evidence, the findings of the trial court thereon will not be disturbed on appeal.

3. A sheriff's certificate of sale of real property vests in the purchaser the legal title subject to the right of redemption only, and upon the issuance of the sheriff's deed, the full title relates back to the date of such certificate.

4. Where an owner of real property encourages one believing himself the owner to construct valuable improvements thereon, such person is estopped from claiming trespass.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. H. F. Ensign, Judge.

Action to cancel water permits and for injunction. Judgment for defendant. *Modified and affirmed.*

Publisher's Note.

4. Estoppel by acquiescence or silence, see notes in 57 **Am. Rep.** 429; 10 **Am. St.** 22.

Hawley & Hawley, Richards & Haga and C. T. Ward, for Appellant.

The statute under which Permits Nos. 7056 and 10415 were issued required that one-fifth of the construction work shall be done within one-half of the period allowed for the completion of the said works, and that the works be completed within five years from the approval of the application. The evidence shows that these statutory requirements were not met. (C. S., secs. 5569, 5584; *Basinger v. Taylor*, 30 Ida. 289, 164 Pac. 522; *Washington State Sugar Co. v. Goodrich*, 27. Ida. 26, 147 Pac. 1073; *Bennett v. Twin Falls etc. Co.,* 27 Ida. 643, 150 Pac. 336.)

The respondent Hazzard under no circumstances can claim that he performed one-fifth of the work under Permit No. 10415, since he did not have title to the works which had been previously constructed under Permit No. 7056 until September 17, 1917, and under the terms of said Permit No. 10415 one-fifth of the work was required to be completed by January 8, 1917. (*Clark v. Hansen,* 35 Ida. 449, 206 Pac. 808; 3 James on Mortgages, 7th ed., sec. 653; *Cantwell v. McPherson,* 3 Ida. 721, 34 Pac. 1095; *Boise Title & Trust Co. v. Pfost,* 32 Ida. 743, 188 Pac. 38; *Washington State Sugar Co. v. Goodrich, supra.*)

The State Engineer had no power to grant the extension he granted under date of June 23, 1917, because the time for completing the works under Permit No. 7056 had expired on January 28, 1916. (C. S., secs. 5570, 5575.)

The trial court struck out of the complaint paragraph X at the opening of defendants' case, and refused to admit evidence on the point that Permit No. 7056 was initiated in fraud on the State Engineer, yet the court found on the issues presented by said paragraph X and there is some evidence in the record supporting appellant's contentions. (C. S., sec. 6830; *Wheeler v. Oregon Ry. & Nav. Co.,* 16 Ida. 375, 102 Pac. 347; *Ludwig v. Ellis,* 22 Ida. 475, 126 Pac. 769.)

..

George Herriott, Bothwell & Chapman, Turner K. Hackman and Harry C. Wyman, for Respondents.

The only issue involved in the case at bar is the cancelation of Permits Nos. 7056 and 10415; hence there was nothing in the case which would take it out of the provisions of C. S., sec. 5592. (*Pollard v. Bailey*, 20 Wall. (U. S.) 520, 22 L. ed. 376.)

A sheriff's deed relates back to the time of sale and, when issued, vests title as of date of sale, and a purchaser who has purchased works at sheriff's sale and has a certificate of sale therefor has a sufficient title, prior to issuance of sheriff's deed, to enable him to apply the works bought in fulfilment of terms of permit as to completion of one-fifth of work of diversion within one-half time.. (*First Nat. Bank v. Lieuallen*, 4 Ida. 431, 39 Pac. 1106; *Foorman v. Wallace*, 75 Cal. 552, 17 Pac. 680; *Bagley v. Ward*, 37 Cal. 121, 99 Am. Dec. 256; *McMillan v. Richards*, 9 Cal. 365, 70 Am. Dec. 655; *Porter v. Pico*, 55 Cal. 165; *Robinson v. Thornton*, 3 Cal. Unrep. 741, 31 Pac. 936; *Riley v. Nance*, 97 Cal. 203, 31 Pac. 1126, 32 Pac. 315; 17 Cyc. 1350; 21 Am. Digest, Cent. ed., under "Executions," secs. 760, 946 and 948; 8 Dec. Ed. Am. Dig., "Execution," sec. 266.)

The plaintiff cannot raise the question of the ownership or possession of the works bought, at the time the same were applied to Permit No. 10415, as she was not the owner nor entitled to possession, and, further, she had no interest in the waters in dispute at that time, as her postdated permits were not applied for until after the issuance of sheriff's deed. (*Utt v. Frey*, 106 Cal. 392, 39 Pac. 807; *Tobey v. Bridgewood*, 22 Ida. 566, 127 Pac. 178.)

Notwithstanding the point of diversion in Permit No. 10415 is the same as that in Permit No. 7056 and the specifications similar, the owner of No. 10415 would have the right to apply the works bought by him which were constructed under No. 7056 in performance of the terms of No. 10415, and there would be a merger of No. 7056 in No. 10415. (1 Wiel on Western Water Rights, 3d ed., p. 420, sec. 390.)

If works could not be applied as contended for, then no merger of No. 7056 in No. 10415 took place and No. 7056 is now a valid and subsisting permit, by reason of performance of one-fifth of work thereunder within the required time and an extension of time by the State Engineer within which to complete the work. (*Pool v. Utah etc. Co.*, 36 Utah, 508, 105 Pac. 289; 29 Cyc. 1433, sec. 3; *United States v. Ju Toy*, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. ed. 1040.)

T. BAILEY LEE, District Judge.—On January 28, 1911, George L. Buck secured from the State Engineer Permit No. 7056 awarding him the right to appropriate 750 cubic feet per second of the waters of Clear Lake, in Lincoln county, for power purposes. One-fifth of the actual construction work was to be completed by July 28, 1913, and the whole by January 28, 1916. Thereafter by a series of conveyances title to this permit together with the works being constructed thereunder, and certain lands incident thereto became vested in the Clear Lake Power & Improvement Company. On July 8, 1914, the respondent, William C. Hazzard, acquired from the State Engineer original Permit No. 10415 covering 1,000 cubic feet per second of the same waters for similar purposes, conditioned that one-fifth of the work be done by January 8, 1917, and the whole by July 8, 1919, the estimated cost of construction being $20,000. The diversion points under each permit were identical. On September 15, 1916, at a sheriff's sale in pursuance of an execution subsequent to judgment secured by the said Hazzard against the said Power and Improvement Company, Hazzard bought Permit No. 7056, together with the lands and works before mentioned, and received the usual certificate of sale therefor. He immediately applied the works purchased upon his Permit No. 10415, and on May 9, 1917, following, made application to the State Engineer for extension of time to complete the work under the respective permits, alleging that litigation over the property and water involved had prevented him from com-

plying with the terms imposed. Extensions were granted in each instance, Later, the plaintiff who in October and December, 1917, had secured State Engineer's Permits Nos. 13362 and 13363, each entitling her to appropriate 750 cubic feet per second of the same waters for power and other purposes, instituted a contest before the State Engineer to cancel Permits Nos. 7056 and 10415 for the reason that respondent, Hazzard, had failed to comply with the law and the conditions and provisions of such permits. Cancelation was denied, and plaintiff on March 21, 1919, filed her suit in the district court of Gooding county, formerly Lincoln county, to cancel such permits, to enjoin respondents from interfering with her rights under Permits Nos. 13362 and 13363 and to have her rights to the waters involved declared prior and superior to those claimed under permits 7056 and 10415. She alleged that both permits had been initiated in trespass; that the estimated cost of construction in each was too low, and that the requisite works could not be built for less than $110,000; that under neither had one-fifth of the work been done within the time prescribed; that permit 7056 had been abandoned for failure to complete the entire work within the period given; that it had been originally secured by fraud perpetrated on the State Engineer through spurious maps and representations, and finally that the extensions of time granted by the engineer had likewise been secured through false and fraudulent representations, and were wholly void in that they had been made after default upon the part of Hazzard.

The district court made its findings against each of plaintiff's contentions, and entered its decree upholding both permits awarding respondent Hazzard prior rights of appropriation thereunder, and enjoining plaintiff from interfering with them. Plaintiff has appealed and assigned numerous errors, many of which it will be unnecessary to discuss.

The charge that the work to be done and completed under Permit No. 10415 by July 8, 1919, was not done requires no further comment than that this action was com-

menced some three months before the arrival of the time limit.

It is not disputed that respondent Hazzard, bought and applied to Permit No. 10415 the works constructed under Permit No. 7056. This he had a legal right to do. (1 Wiel on Water Rights, 3d ed., sec. 390, and authorities cited.) It was an original and independent expenditure of his own. He later made proof of this work before the engineer who accepted it as applied to Permit No. 10415, and entered his order of approval. Respondent has since stood continuously upon the validity of this permit, and at no time has he evidenced any intention to restore the work to the original permit. His feet still rest upon the work applied. Abandonment is a matter of intent coupled with corresponding conduct; and it is obvious that respondent has sought to support Permit No. 10415 with the work stripped from Permit No. 7056. It is true that after the application of the work to Permit No. 10415 he secured an extension of time under Permit No. 7056, but it is impossible to pivot two permits at the same time upon identical work. Each must stand upon separate or additional construction. Otherwise, compliance with the terms of one permit would work a fictitious compliance with the other. Respondent pleads that the cost of construction under either permit will total $50,000. The objects to be achieved under both permits being identical, it cannot possibly be conceived that respondent proposes to spend $100,000 when a disbursement of one-half of that amount is declared to be sufficient. Yet that is just what he would be compelled to do to satisfy the requirements of the two coexistent permits. It would seem that Permit No. 7056 has been purposely and consistently abandoned, and this being the case, it is unnecessary to examine those specifications of error affecting its validity.

As to Permit No. 10415, appellant contends chiefly that the work necessary to effectuate the same will cost $110,000 and that one-fifth of this work was not completed by January 8, 1917. There is a mass of conflicting testimony in-

this regard, an analysis of which discloses some competent evidence supporting respondent. The witness Hamming, superintending engineer, testified that the cost of completing the work would be the sum of $34,890.78; that the cost of the work completed prior to his employment was $17,590.92; that under his direction further work had been done at a cost of $1,542.00, and that all work done had been completed by October, 1914. In this he is corroborated by the witness Berg, a Cornell engineer, who estimated the cost of completion at $33,503.00 and the cost of the work already done at $17,974.10.

Discussing the practicability of Engineer Hamming's design, the witness Dibble, an hydraulic engineer of wide experience, testified: "I believe a dam built according to his design could be readily built to divert all of the water."

The defendant Hazzard testified in detail as to the completed work and incident cost. The court found that the work could be completed at a cost of $50,000, and that some $19,000 had been expended within the limit. Appellant contends that certain items such as respondent's salary and traveling expenses while investigating machinery are not proper construction charges, and with this we are agreed, but the elimination of these items together with others complained of leaves a sufficiently wide margin for the court to find that one-fifth of the work was done; and the findings will not be disturbed.

It is further urged that respondent, Hazzard, could not on September 15, 1916, apply to Permit No. 10415 the works purchased at execution sale, for the reason that he had no title thereto, and could not acquire it until twelve months thereafter, long subsequent to the expiration of the time limit for such construction fixed as January 8, 1917. The record shows that the sheriff's deed duly issued vesting respondent with the full title as of the date of sale. No other creditor was ahead of him by attachment or otherwise. Furthermore, he was in actual possession of the works, holding the legal title, and his application was not being contested by the owner of the right of redemption, the only person

who could defeat him.  When appellant brought her action, the construction work in the eyes of the law had belonged to respondent ever since the issuance of the certificate of sale on September 15, 1916.

Finally, appellant insists that Permit No. 10415 was initiated in trespass and void against her for the reason that some of the works are situated upon her lands without her permission or her written consent.  It is impossible to ascertain from her brief and the maps and abstracts submitted the actual location or extent of the parcels intended.  But it appears that respondent holds practically all the land involved by title derived through appellant and her husband. One deed in particular recites that the grantee is to use the land for power purposes, and as part consideration of the conveyance undertakes to furnish appellant and her husband, grantors, an agreed amount of power during their natural lives.  The deed is dated September 19, 1912, nearly eight years before this suit was instituted.  It appears that during the entire time of the 1912 and 1914 operations, she and her husband living in the immediate vicinity had continuous dealings with the Improvement Company, boarded and sold supplies to the workers; and maintaining their residence on the premises ever since, they raised no cry until March 21, 1919, when this action was begun.  Under these admitted facts, a charge of trespass has no standing.

The findings are sustained and the decree affirmed except as to Permit No. 7056, which has been abandoned.  The trial court is directed to modify accordingly.  Costs awarded to respondents.

Budge and William A. Lee, JJ., concur.

McCARTHY, C. J., Dissenting in Part.—I am unable to agree with part of the reasoning upon which the majority opinion is necessarily grounded.  C. S., sec. 5570, provides that the actual construction work called for by the application, pursuant to which a permit is issued, shall be completed within a period of five years from the date of the

approval by the department of reclamation, and that one-fifth of such construction work shall be done within one-half the period of time allowed for the completion. The majority opinion is based upon the proposition that respondent Hazzard could purchase Permit No. 7056 and apply the work done under it to Permit No. 10415 in such a way that the work already done under No. 7056 should count. as the one-fifth of the construction work required by the statute to be done under No. 10415 within one-half the time allowed for the completion of the works. This in my judgment is a violation of the statute and against public policy. I have no quarrel with the doctrine that one may purchase a permit and utilize the work that has been done under it, thereby making it unnecessary to duplicate that work. But the purpose of C. S., sec. 5570, is to require diligence as evidence of good faith and a condition of continued progress. Under the doctrine of the majority opinion, just before one-half the time allowed for the completion of the work has expired, a permit under which work has been done can be repeatedly transferred and rights kept alive indefinitely without any additional construction work. Such a holding, therefore, defeats the purpose of the statute, and it is also in conflict with what this court has said in dealing with an analogous question.

"Where a permit is issued for the enlargement or extension of existing works, the person to whom such permit is granted must complete one-fifth of such extension or enlargement within one-half of the time granted for the completion of the work and cannot claim credit for the construction already done at the time the permit was issued." (*Clark v. Hansen,* 35 Ida. 449, 206 Pac. 808.)

I am authorized to state that Justice Wm. E. Lee concurs in this dissenting opinion.

Petition for rehearing denied.