(No. 5895. May 18, 1933.)

INTERMOUNTAIN ASSOCIATION OF CREDIT MEN, a Corporation, Respondent, v. N. H. HALLSTROM COAL COMPANY, a Corporation, Appellant.

[22 Pac. (2d) 686.]

W. A. Ricks, for Appellant.

152

B. W. Davis for Respondent.

HOLDEN, J.—This is an action to recover on a merchandise account assigned to respondent. The Knight Fuel Company, hereinafter called the Fuel Company, is engaged in the business of selling and shipping coal, apparently as a wholesaler, with headquarters at Salt Lake City. For a number of years prior to April 13, 1931, N. H. Hallstrom was engaged in the coal business at Rexburg, Idaho, as a local dealer. During that period the Fuel Company made numerous shipments to Hallstrom. April 13, 1931, Hallstrom, together with his two daughters, Lucy H. Chase and Pearl Wright, incorporated the coal business theretofore operated by the father N. H. Hallstrom. The business was incorporated under the name of the N. H. Hallstrom Coal Company, with N. H. Hallstrom president and Lucy H.

Chase, secretary-treasurer. Lucy H. Chase held three shares, Pearl Wright one share and the father one share. Before incorporation, Hallstrom had transferred his property to his children, and at the time of incorporation Hallstrom had a large number of accounts due him totaling about $7,000 (some of which were later collected), and owed the Fuel Company several thousand dollars. After incorporation, the father continued to manage and conduct the business as before, using the same equipment, office phone and home phone numbers, and in the same location. April 29, 1931, N. H. Hallstrom wrote advising the Fuel Company, among other things, that ''we, 2 of my daughters and myself, have just incorporated the business,'' inclosed a check for $1,000, and directed that it be credited to his personal account, which was done. June 27, 1931, Hallstrom mailed another check for $500, with instructions to credit the check to his personal account, which was done, and on September 10, 1931, Hallstrom mailed another check for $400, which was also credited to his personal account. All three checks, the check for $1,000 dated April 29, 1931, the check dated June 27, 1931, for $500, and the check dated September 10, 1931, for $400, were made out on printed blank forms very evidently used before incorporation by N. H. Hallstrom, the words: ''Coal Co.'' being added with pen and ink to the name: ''N. H. Hallstrom.'' And in his correspondence with the Fuel Company, except in two instances, Hallstrom used the printed letter-heads also very evidently used by him before incorporation, those two instances being a letter dated April 29, 1931, and a letter dated September 10, 1931, when the words: ''Coal Co.'' were added with pen and ink to the name: ''N. H. Hallstrom,'' but in every instance disclosed by the record, all of the letters written to the Fuel Company, making remittances or ordering coal, including the letters of April 29, 1931, and September 10, 1931, Hallstrom signed his name and not the name of the corporation.

May 21, 1931, the Fuel Company wrote N. H. Hallstrom insisting upon substantial remittances for application to the

coal account as it stood at the date of incorporation and to help meet pay-rolls. May 25, 1931, the Fuel Company again wrote Hallstrom, stating the exact amount due it for coal shipped during the months of November and December, 1930, making a special appeal for a substantial payment, and, receiving no response, June 22, 1931, the Fuel Company again wrote Hallstrom stating the balance due on the old coal account, and insisting upon a substantial remittance to apply to that balance. June 27, 1931, Hallstrom mailed the above-mentioned check for $500, stating, among other things, that he had nearly $7,000 out, that he could not get any money, but that he hoped to get some towards fall. July 21, 1931, and again August 27, 1931, the Fuel Company wrote Hallstrom urging him to mail remittances for application to the old coal account, and on September 10, 1931, Hallstrom mailed a check for $400, above referred to, saying that he wished it was ten times as much, and that he would send in some more as soon as he could get it.

In the latter part of October, 1931, L. E. Adams, general sales agent of the Fuel Company, went to Rexburg, Idaho, saw Mrs. Lucy H. Chase, daughter of N. H. Hallstrom, and secretary-treasurer of the N. H. Hallstrom Coal Company, objected to the transfer of Hallstrom's property to his children, and insisted that the old coal account be either paid or secured, which the children refused to do. However, the N. H. Hallstrom Coal Company gave Adams a check for $400, dated October 23, 1931, made payable to the Fuel Company. That check was made out on the same form and signed in the same manner as the other checks. There was a conflict in the evidence as to whether that check was given to apply on the old coal account or in payment for coal ordered from a fuel company salesman named Garff just shortly before Adams went to Rexburg. However, the court gave appellant credit for the check. On the trial of the case, the Hallstrom Coal Company pleaded payment, claiming credit on the corporation coal account, not only for the October, 1931, check for $400, but also for the June, 1931, check for $500, as well as the September, 1931, check

for $400, contending that the father, N. H. Hallstrom, could not pay his personal debt to the Fuel Company with appellant's funds. The case was tried to the court, sitting without a jury, judgment being entered in favor of the respondent and against the appellant for the sum of $515.01, plus interest to the amount of $33.50, and costs, from which an appeal was taken to this court.

Appellant specifies and relies upon four alleged errors for a reversal of the judgment of the trial court. Those which we deem to be important and controlling are: 1. That the evidence shows that N. H. Hallstrom used appellant's funds to pay his private debts, without the consent of the directors. 2. That the Fuel Company knew that it was dealing with an officer of appellant, and that the application of the funds of appellant, by the Fuel Company, toward the payment of N. H. Hallstrom's private account, was without authority.

At the outset it may be stated that it is not disputed that the father was authorized to use the one thousand dollar check and have it applied in part payment of his personal account to the Fuel Company. In fact, the daughter, Mrs. Lucy H. Chase, testified that the check was given for that purpose because the appellant had on hand some of the Fuel Company's coal at the time of incorporation. Bearing upon the question of the payment of the personal accounts of N. H. Hallstrom with funds of the appellant, Mrs. Chase testified:

"Q. And did you pay—did you pay any account, individual accounts of your father's with corporation checks?

"A. You say did we pay them?

"Q. Yes.

"A. Yes; we paid individual accounts.

"Q. If he had some individual accounts, it was your custom to pay his personal accounts?

"A. It was charged up to him; everything we paid was charged to him.

"Q. But you did do that, from time to time?

"A. Yes."

This is very strong evidence that it was the custom of the appellant to pay Hallstrom's personal accounts and to charge all amounts so paid to him. And the record further shows, in regard to the remittances to the Fuel Company applied toward the payment of Hallstrom's personal account, that Hallstrom personally wrote all of the letters transmitting such remittances, the checks being signed by N. H. Hallstrom, as president, and by Lucy H. Chase, as treasurer of appellant company. In other words, the father wrote the letters and the daughter joined him in issuing the checks, so that the daughter must have known that the father was making the remittances for application to his personal account. In fact, she admitted that she knew that her father had written the letter dated September 10, 1931, inclosing a check of that date for $400. No objection to the application of that remittance, or any remittance, to the N. H. Hallstrom personal account was ever made by the appellant, thus giving the Fuel Company to understand and making it appear to it that the father was authorized to use the remittances and to direct that the same be applied toward the payment of his personal account. And further, the Fuel Company wrote N. H. Hallstrom from time to time, as above stated, setting forth the amount due on Hallstrom's personal account, and demanding remittances, and there being nothing in the record even hinting that the father kept this correspondence out of the hands of his children, to whom he had already transferred his property, credulity must be developed in one to a point of weakness, to believe that these daughters did not have access to the correspondence by which the father remitted to the Fuel Company, and fully approve the same. In this connection, it may be added that the father testified in behalf of the appellant, and it is most significant that the appellant made no effort to prove by him that he used any of appellant's funds to pay on his personal account to the Fuel Company, without authority. And on June 27, 1931, the date the check for $500 was mailed to the Fuel Company by N. H. Hallstrom, the appellant did not owe the Fuel Company that much

money. With collections difficult and almost impossible, as the father represented to the Fuel Company, to remit a larger amount than that then owing would make the appellant a most eccentric corporation.

And bearing in mind that the appellant used the same letter-heads and checks in the manner above set forth, and home and office phone numbers, equipment and location used by N. H. Hallstrom personally, and that appellant N. H. Hallstrom Coal Company was incorporated by the father and his two daughters, and that the father managed and conducted the business after incorporation, as before, taken in connection with all the other facts and circumstances in the case, the conclusion is irresistible that the incorporation of the N. H. Hallstrom coal business brought a change in name only, and that instead of conducting the coal business in his own name, Hallstrom conducted it in the name of the appellant.

The appellant did not notify the Fuel Company that Hallstrom had no authority to make the remittances and to have the same applied toward the payment of his personal account, and there is nothing in the record which would excite the suspicion of the Fuel Company that Hallstrom had no authority to do that. And it is evident that the Fuel Company, from time to time, shipped coal to the appellant under the belief that Hallstrom was authorized to make the payments, and the appellant received the benefits of such coal shipments. And there was no collusion or fraud so far as the Fuel Company was concerned; it acted in good faith and was unaware of any alleged defect of authority on the part of Hallstrom to make the payments. Therefore, the appellant is bound by the conduct of its president and manager, and is estopped from relying, as a defense, upon any lack of authority in that officer, even if it existed, against the rights of the respondent. (*Pettengill v. Blackman*, 30 Ida. 241, 164 Pac. 358; *Hammitt v. Virginia Min. Co.*, 32 Ida. 245, 181 Pac. 336.)

 While a careful examination of the record discloses a substantial conflict in the evidence on the question

of the authority of the father, N. H. Hallstrom, to use the funds of appellant to pay *pro tanto* his personal account to the Fuel Company, we conclude it is quite sufficient to support the findings and judgment of the court. Where there is a substantial conflict in the evidence, the findings and judgment of the lower court will not be disturbed. (*Syster v. Hazzard,* 39 Ida. 580, 229 Pac. 1110; *Rogers v. Crockett,* 41 Ida. 336, 238 Pac. 894; *Russell v. Boise Cold Storage Co.,* 43 Ida. 758, 254 Pac. 797.)

Appellant objects to an allowance of interest, made by the trial court, on the sum of $515.01 (the amount respondent recovered), from April 11, 1931, to March 31, 1932 (the date judgment was entered for $515.01), in the sum of $33.50. We find from an examination of the record that interest on the above-stated amount should have been allowed from October 1, 1931, to the date judgment was entered, at the rate of seven per cent per annum, and not from April 11, 1931, and so computed the interest amounts to the sum of $21.60, a difference of $11.90. We direct that the trial court reduce, as of the date of the entry of judgment, the item of interest allowed the respondent, from $33.50 to $21.60.

The judgment of the trial court, so modified, is affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.