(No. 6166.   December 19, 1934.)

R. M. CARREY, ROBERT CARREY, E. S. WALKER,
A. S. HARDY and GEORGE MOTZ, Respondents, v.
SECESH DREDGING, MINING & MILLING CO.,
INC., a Corporation of Idaho, SECESH DREDGING,
MINING & MILLING CO., INC., a Corporation of
Washington, and J. N. RICE, Individually and as
Trustee, Under the Name of SECESH MINING SYN-
DICATE, Defendants; SECESH MINING & MILLING
CO., INC., a Corporation of Idaho, Appellant.

[39 Pac. (2d) 772.]

Tannahill & Durham, Paul W. Hyatt and S. S. Bassett, for Appellant.

A. S. Hardy and George Donart, for Respondents.

HOLDEN, J.—This is a suit to quiet title to certain placer mining ground located in Idaho county. September 4, 1918, M. B. Morrow, and others, by power of attorney,

authorized one J. N. Rice to locate placer mining ground for them and in their behalf. Thereafter, and in April, 1919, under and by virtue of the power of attorney executed to him, Rice caused location notices to be filed with the recorder of Idaho county upon placer ground (situate in that county), under the name of Gem Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10. Later, by mesne conveyances, said Gem mining claims were ultimately conveyed to the appellant. Gem Nos. 1, 2 and 3 are not involved in this suit.

May 26, 1932, respondents filed location notices with said recorder, under the name of Carrey Nos. 1, 2, 4, 5, 7, 8, 9, 10, 11 and 12, upon the same ground covered by Gem Nos. 4, 5, 6, 7, 8, 9 and 10. Thereafter, to wit, September 6, 1932, respondents made amended locations, under the name of Carrey Nos. 1, 2, 4, 5, 7, 8, 9, 10, 11 and 12, covering approximately the same ground embraced within the original Carrey locations, and caused said amended location notices to be filed with such recorder September 24, 1932.

October 18, 1932, respondents commenced this suit to quiet title to the Carrey group of placer claims. February 6, 1934, findings of fact and conclusions of law were made and filed, and judgment rendered and entered, quieting title to the Carrey group in the respondents. The appeal to this court is from that judgment.

Appellant complains in several particulars, specified in its brief, in effect, that the evidence is insufficient to support the findings and decision of the trial court. Much testimony was taken, and documentary evidence adduced, upon the trial of this case. A review here of that testimony and documentary evidence would necessarily be very lengthy, and serve no useful purpose. We have, however, carefully and studiously examined the record before us, and find that while there is some conflict in the evidence, it, nevertheless, most convincingly and amply supports the findings. It has been repeatedly held by this court that where there is a substantial conflict in the evidence, the findings and judgment of the lower court will not be disturbed. (*Syster v. Hazzard*, 39 Ida. 580, 229 Pac. 1110; *Rogers v. Crockett*, 41

Ida. 336, 238 Pac. 894; *Russell v. Boise Cold Storage Co.*, 43 Ida. 758, 254 Pac. 797; *Webster v. McCullough*, 45 Ida. 604, 264 Pac. 384; *Boomer v. Isley*, 49 Ida. 666, 290 Pac. 405; *Isaak v. Journey*, 52 Ida. 392, 15 Pac. (2d) 1069; *Intermountain Assn. of Credit Men v. Hallstrom Coal Co.*, 53 Ida. 151, 22 Pac. (2d) 686; *Reinhold v. Spencer*, 53 Ida. 688, 26 Pac. (2d) 796; *California Jewelry Co. v. McDonald*, 54 Ida. 248, 30 Pac. (2d) 778.)

Appellant states that: "A determination of the case is based entirely upon only two propositions of law: (First) Were the locations of the Gem Placer Claims 4 to 10, inclusive, valid under the mining laws of the United States and of the state of Idaho? And (Second) Was the ground embraced within the boundaries of the Gem group open for relocation on May 26, 1932?"

After an exhaustive examination of the law applicable to the facts in the case, we have concluded that a determination of the second proposition will be decisive, to wit, "Was the ground embraced within the boundaries of the Gem group open for re-location on May 26, 1932?"

The trial court having found, upon ample and convincing evidence, that no labor had been performed, or improvements made, upon the Gem group subsequent to July 1, 1929, appellant contends that, nevertheless, "no forfeiture could take place by reason of the fact that the Act of Congress of 1932, suspending assessment work, amounted to a resumption of work after failure on the part of the defendants to perform assessment work, and thereby corrected all previous rights to forfeiture."

Congress passed the following resolution, June 6, 1932:

"That the provision of Section 2324, of the Revised Statutes of the United States, which requires on each mining claim located, and until a patent has been issued therefor, not less than $100 worth of labor to be performed, or improvements aggregating such amount to be made each year, be, and the same is hereby, suspended as to all mining claims in the United States, including Alaska, during the fiscal

year from July 1, 1931, to July 1, 1932." (47 U. S. Stat. at L., pt. 1, p. 290.)

Very shortly thereafter, to wit, June 30, 1932, Congress amended that resolution to read as follows:

"That the provision of Section 2324, of the Revised Statutes of the United States, (30 U. S. C. A. Sec. 28), which requires on each mining claim located, and until a patent has been issued therefor, not less than $100 worth of labor to be performed, or improvements aggregating such amount to be made each year, be, and the same is hereby, suspended as to all mining claims in the United States, including Alaska, during the year beginning at 12 o'clock m. July 1, 1931, and ending at 12 o'clock m. July 1, 1932." (47 U. S. Stat. at L., pt. 1, p. 474.)

It will be noted that the joint resolution approved June 6, 1932, suspended assessment work during the "fiscal year" 1931–1932. Hence, the passage of the joint resolution, approved June 30, 1932, *supra,* amending the former resolution, and omitting the words "fiscal year."

In support of its contention that the resolution approved June 6, 1932, as amended June 30, 1932, *supra,* suspending assessment work for a period of a year, commencing July 1, 1931, and ending July 1, 1932, *amounted* to a *resumption* of *work* following and after its failure to perform the assessment work, or to make any improvements, for two full assessment years, appellant cites and strongly relies upon *Field v. Tanner,* 32 Colo. 278, 75 Pac. 916.

In that case the court construed sections 1 and 2 of the act of Congress, passed July 2, 1898, entitled, "An Act to relieve owners of mining claims who enlisted in the military or naval service of the United States for duty in the war with Spain from performing assessment work during such term of service." There are several important differences between the provisions of sections 1 and 2 of the act of Congress of July 2, 1898, and the joint resolution of Congress of June 30, 1932, *supra.* For example: Section 1 of the 1898 act, *supra,* expressly provided that the provisions of section 2324 (30 U. S. C. A., sec. 28) "shall not

apply to claims, or parts of claims, owned by persons who may enlist in the volunteer army or navy of the United States for service in the war between this country and Spain . . . . '' And section 2 required that: ''Those desiring to take advantage of this Act shall file, or cause to be filed, a notice in the Clerk's office where the location certificate of said mine is recorded, before the expiration of the assessment year, giving notice of his enlistment and of his desire to hold said claim under this Act.'' And the act of Congress of July 2, 1898, *supra*, was passed, as its title clearly indicates, solely for the relief of volunteer soldiers and sailors of the United States in the war with Spain, in grateful recognition of noble services rendered to the country.

On the other hand, the congressional resolution of June 30, 1932, *supra*, does not provide that the provisions of section 28, *supra*, requiring that not less than $100 worth of labor shall be performed, or improvements made, on mining claims each year, ''shall not apply,'' for instance, to the appellant or any group whatsoever, nor does that resolution require filing of a notice by owners of mining claims desiring to obtain its benefits, nor was said resolution passed for the sole purpose of granting relief, in the form of suspension of assessment work, to any specified group, or groups, of individuals.

The resolution of June 30, 1932, *supra*, is clear and explicit in its provisions suspending assessment work and improvements on mining claims for a period of a year, commencing July 1, 1931, and ending July 1, 1932. The resolution is not ambiguous or uncertain in any particular. Assessment work and improvements, in language which cannot be misunderstood, are suspended for a period of a year, and for that period only. Nor does that resolution, either expressly or impliedly, suspend assessment work for previous years, or for any year other than that clearly and definitely fixed. Nor does it provide, either expressly or impliedly, that the suspension of assessment work, for the period so fixed, shall *amount* to a *resumption* of *work*.

In the case at bar no assessment work had been performed, or improvements made, by appellant, for a period of two years prior to the date respondents located the mining ground in controversy, but in the Field case, *supra*, Field, in good faith, had expended on each claim more than the required amount before Tanner attempted to locate the property, and, further, the 1898 statute, *supra*, had been passed and had become effective before Tanner filed on the claims in controversy in that case, and, lastly, Tanner failed to do the full amount of the assessment work required by law. In the instant case, respondents located the mining ground in question before either of the said resolutions were passed by Congress, and while appellant was still in default in the matter of the performance of the required annual assessment work. In the Field case, *supra*, the Colorado court said:

"The question, then, is, what is the meaning of this act? Section 2324 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1426), therein referred to, declares that for failure to do the annual assessment work upon unpatented lode mining claims the same become liable to forfeiture and re-location. The section also specifically provides that, if the original owner shall resume work upon such claim after such failure, and before such location by a third person, the rights of the original locator are revived. It will be observed that failure to do the annual assessment work does not *ipso facto* work a forfeiture of a lode mining claim, but the same merely becomes liable to forfeiture, which may be complete and final when the rights of third persons accrue. If, however, before such rights do attach, the original locator resumes work, the forfeiture is avoided."

From which it appears that the Colorado court held that the failure to do annual assessment work does not *ipso facto* work a forfeiture of a claim, which claim will become liable to forfeiture, and which forfeiture will become complete and final, if and when the rights of third persons accrue, but that if, before the rights of third persons attach, the original locator resumes work, the forfeiture is avoided. The converse of that rule must be that where there has been a

failure to do annual assessment work, and the rights of third persons attach before the original locator resumes work, and while such locator is still in default, the forfeiture becomes complete and final.

The rule on that point, announced in the Field case, is approved in the recent case of *United States v. West,* 30 Fed. (2d) 742, 745, 58 App. D. C. 332.

We conclude that the rights of respondents, under their locations, having attached before the passage of the June 30, 1932, resolution, *supra,* and before any attempt at the resumption of actual work by appellant, and while appellant was still in default in the performance of the annual assessment work, its rights were thereby completely and finally forfeited.

For the reasons herein stated, the congressional resolution of June 30, 1932, suspending assessment work from July 1, 1931, to July 1, 1932, cannot be construed to *amount* to a *resumption* of *actual work* by appellant, after its default, as appellant contends the Colorado court, in the Field case, *supra,* interpreted the said act of Congress. That resolution is so plain, certain and unambiguous, that no doubt arises from its own terms as to its scope and meaning—a bare reading suffices—therefore, interpretation is needless. It is, consequently, immaterial as to whether the Colorado court did, or did not, construe the 1898 act of Congress, *supra,* as contended by the appellant. And further, to construe that resolution into the *equivalent* of a *resumption* of *actual work,* and the performance of annual assessment work for the years in which appellant completely defaulted, would encourage and approve long and continued failure to perform required annual assessment work, and thus seriously affect the development of our mineral resources, contrary to public policy, and result in great public mischief. In Lewis' Sutherland on Statutory Construction (2d ed.), section 489, it is said:

"A construction which must necessarily occasion great public . . . . mischief must never be preferred. . . . . Of two constructions, either of which is warranted by the words

of the amendment of a public act, that is to be preferred which best harmonizes the amendment with the general tenor and spirit of the act amended.''

In *Ex parte Haines,* 195 Cal. 605, 234 Pac. 883, it is said: ''Courts will be astute to avoid a result contrary to sound sense and wise policy.''

The question: Was the ground embraced within the boundaries of the Gem group open for relocation on May 26, 1932? therefore, must be answered in the affirmative.

The judgment is affirmed. Costs to respondents.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.