## SMITH LAND CO. v. FUHRIMAN et al. (POCATELLO VALLEY PIPE LINE CO., Intervener).

District Court, D. Idaho, E. D.

Dec. 31, 1940.

J. D. Skeen and E. J. Skeen, both of Salt Lake City, Utah, for plaintiff.

A. L. Merrill and R. D. Merrill, both of Pocatello, Idaho, for defendants.

D. A. Skeen, of Salt Lake City, Utah, for intervenor.

CAVANAH, District Judge.

The plaintiff seeks a decree quieting title to the use of one-half of the flow of the spring or spring area located four miles east of Ridgedale, Idaho, and known as the Idaho Springs. The waters thereof are collected in diverting works near their source and for more than ten years past has been conveyed by pipeline from the collecting works to plaintiff's farm located in Boxelder County, Utah, and others, to their lands, where it has been beneficially used for culinary and stock watering purposes. It being charged in the complaint that the defendants wrongfully and in disregard of the rights of the plaintiff to the use of one-half of the flow of the waters, caused all of the waters to which the plaintiff is entitled, to be diverted from its pipeline, with the result that it is wholly deprived of water.

The defendants, by answer and cross-complaint, take issue with the plaintiff, as to its alleged right and assert that about January 5, 1938, they purchased approximately 2,650 acres of land, previously owned by William Longstroth, Steven Longstroth and George S. Longstroth, located in Idaho; that the Longstroths, their predecessors in interest, appropriated to a beneficial use and continued thereafter to beneficially use all of the waters of the spring and its area for domestic and culinary uses, to water livestock and for irrigation; that on January 5, 1909, an agreement was entered into in writing between

Longstroths, who were then the owners of the real estate, and to the right of the use of said waters, and the Blue Creek Land and Livestock Company, who should develop the springs, so there would be obtained and maintained the maximum flow of water, and that the Blue Creek Land and Livestock Company should construct three tanks, all of the same material, one of which should be called the main tank and the other two individual tanks. One of which individual tanks was to belong to the Longstroths and one to the Blue Creek Land and Livestock Company. All of the tanks were to be constructed and maintained by the Blue Creek Land and Livestock Company, and to be maintained in such condition as to prevent any waste of the water; that the Blue Creek Land and Livestock Company shall construct their pipeline sufficient in size to conduct at least one-half of the Longstroth water to their lands so they can operate and reach their lands; that the Blue Creek Land and Livestock Company failed to carry out the terms of the agreement and have permitted the pipelines, spring boxes and conduits to break, decay and leak so that more than one-half of the waters of the spring area are lost, and the remaining portion is polluted, and by reason thereof it has forfeited all of its rights, and to the use of the water, under the contract. That if plaintiff has any claim in the waters from the spring and the spring area it must be based upon the agreement and as a successor in interest of the Blue Creek Land and Livestock Company; that the plaintiff has at all times failed and refused to maintain the system in a reasonable state of repair and refused to develop and maintain the spring area in order to secure therefrom the maximum flow of water and to prevent pollution and waste of the same. It is further alleged in the answer that to place the system in a condition to serve and deliver the minimum amount of water it would require the removal of all of the old rotten wooden pipe, and make other repairs, and the cross-complainant prays title to all of the water be quieted in them against plaintiff and if it be determined that the plaintiff has any right in the water that it be measured and conditioned upon complete development of the spring and spring area and the rebuilding of the system by the plaintiff and cross-defendant and repayment by the plaintiff to the defendant of all sums paid by them for the renovation and repair of the system and the loss sustained by them.

The Pocatello Valley Pipe Line Company in its complaint in intervention claimed to be the owner of and entitled to the use of one-half of the waters from January 7, 1921; that it has made improvements and complied with all the obligations and requirements connected with the acquisition and use of the waters. It denies that plaintiff has any right or interest in the waters, and offers to perform any and all conditions necessary to be done in order to fully develop and preserve and put to a beneficial use the waters.

The plaintiff challenges the jurisdiction of the court to hear the issues between it and the intervenors. It has conceded, however, jurisdiction exists as between it and the defendants. When jurisdiction is once acquired between the plaintiff and defendants, it is not defeated by the intervention of the Pocatello Valley Pipe Line Company on the ground that there does not exist a diversity of citizenship between the plaintiff and the intervenors, and the jurisdictional amount. Simpkins Federal Practice, Rules of Civil Procedure, Section 434; City of Shidler v. H. C. Speer & Sons Co., 10 Cir., 62 F.2d 544; Wichita R. R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124.

The contention of the plaintiff that the Pocatello Valley Pipe Line Company is not a corporation as alleged is not supported by the evidence as the record discloses a certified copy of the articles of incorporation and the allegations of its organization and existence as such under the laws of Utah, and it is functioning thereunder.

### As to Plaintiff's Rights.

John W. Smith was an incorporator of the Pocatello Valley Pipe Line Company and was the Secretary of the Blue Creek Land and Livestock Company at the time of the transfer to the Pocatello Valley Pipe Line Company, and he then became a director and stockholder of the Pocatello Valley Pipe Line Company and continued to act as such. He became the owner of 1/6 of the stock of the Pocatello Valley Pipe Line Company. He constructed a pipe line to the lands then owned by him, and in 1930 he organized the plaintiff corporation, and conveyed his water to his real estate. Thereafter and beginning with 1932 he contends that he began claiming one-half of the water from the springs area adversely to everybody and that the defendants

and intervenors had abandoned what interest they had in the water.

■ This contention of adverse possession and abandonment cannot be upheld under the evidence and the decisions of the Supreme Court of the State, because he was at that time a director and stockholder of the Pocatello Valley Pipe Line Company, who then claimed one-half of the waters, and being so he cannot then organize the plaintiff while being such director and stockholder, and claim adverse possession to the Pocatello Valley Pipe Line Company.

■ He knew of the contract of January 5, 1909, effecting the water as being executory. His conduct shows that he participated in the steps taken from the time of the execution of the contract of January 5, 1909, as he signed it as Secretary of the Blue Creek Land and Livestock Company and thereafter signed the assignment to the Pocatello Valley Pipe Line Company as Secretary of the Blue Creek Land and Livestock Company. During that time and under such circumstances he cannot make a valid appropriation of the water in the absence of abandonment by the prior user, which is a matter of intent, and the evidence discloses that neither the Blue Creek Land and Livestock Company nor the Pocatello Valley Pipe Line Company, by any action of theirs, show any intent on their part of abandonment of their interest in, and right to the use of the water. Joyce v. Murphy Land & Irrigation Company, 35 Idaho 549, 208 P. 241; Union Grain & Elevator Company v. McCammon Ditch Company, 41 Idaho 216, 240 P. 443; Syster v. Hazzard et al., 39 Idaho 580, 229 P. 1110.

■ The mere fact that the plaintiff might have used the water longer than the prescribed period of time is not alone sufficient to establish his right thereto by adverse use.

As to the Rights of the Defendants.

■■ It is thought that the defendants are not entitled to the ownership and use of all of the waters of the springs and their areas as claimed by them. A history of their rights discloses that some forty years ago William Longstroth, Steven Longstroth and George Longstroth acquired the real estate upon which the springs arise, and the area is located, and used the water for irrigation, culinary and domestic use. The Longstroths were the predecessors in interest of the defendants. Later, in January, 1909, an agreement was made between them and the Blue Creek Land and Livestock Company in which Longstroth agreed to sell and convey to the Blue Creek Land and Livestock Company an undivided one-half interest in the springs and the water flowing therefrom for a consideration of $1,000 and the company's entering upon the development of the springs by digging out, rocking up or curbing the same, and putting in such fixtures as are necessary for the development of the springs and conveying the waters therefrom, and the Company further agreed to construct three tanks, one of which shall be considered the main tank, and the other two individual tanks, and to construct and maintain a pipeline or pipelines to carry waters from the springs to the main tank where it is to be divided. The contract is to apply to the assigns of the parties, and that neither of the parties are to interfere with the other's full share of the water. Under the terms of the contract it is asserted that the plaintiff and intervenor have lost their interest by failure to comply with them. This contention cannot be sustained although the system might have been maintained in a better condition under the contract, yet, the parties have during the long period of time attempted to and did receive a certain amount of water, and if the system was not kept up in the manner required, they seem to function in the way they did without any of them moving until recent litigation. The evidence would not, under equitable principles applying to the use of public waters, warrant the conclusion that the defendants had abandoned their rights, for the parties all, at some time performed some act which would go to show that they each claimed some interest and right to the use of the water. Intent of abandonment must appear under the Idaho decisions, therefore the defendants are the owners and entitled to the use of one-half of the waters of the springs and their areas.

As to the Rights of the Intervenor, Pocatello Valley Pipe Line Company.

■ It appears that the Pocatello Valley Pipe Line Company was organized as a corporation, and the Blue Creek Land and Livestock Company assigned to it one-half interest in the springs and their areas. It recognized its obligation to perform all of the work and bear all of the expenses of maintaining the system provided for in the contract of January 5, 1909, and therefore it is entitled to be decreed one-half of the waters of the springs and the area, caring

'for the work and expense of maintaining the system.

A summary of the rights and obligations of the parties are:

1. The plaintiff is entitled to be decreed as a stockholder in the Pocatello Valley Pipe Line Company of one-sixth of the stock of the company, of the waters of the springs and their area. He is to be given credit for the amount he expended in improvements on the system in June 1940.

2. Defendants are entitled to be decreed to be the owners of, and entitled to the use of one-half of the water flowing from the springs and their area, complying with the terms of the contract of January 5, 1909, which water is to be divided at the main tank.

3. The Pocatello Valley Pipe Line Company, intervenor, is entitled to a decree as the owner of and entitled to the use of one-half of the waters of the springs, and their area, and is required to comply with the terms and conditions provided in the contract of January 5, 1909, there required of the Blue Creek Land and Livestock Company predecessors in interest of the intervenor.

Findings and decree will be prepared in accordance with the views here expressed, each party paying their costs.