182 P.2d 963

**JONES v. ADAMS et al.**

No. 7336.

Supreme Court of Idaho.

July 2, 1947.

Frank H. Joseph, of Weiser, for respondent.

George Donart, of Weiser, and Herman Welker, of Payette, for appellants.

HOLDEN, Justice.

This is a suit to compel the specific performance of an oral contract to will real property. The cause was tried April 25, 1946. August 5, 1946, findings of fact and conclusions of law were made and entered in favor of plaintiff and respondent and against defendants and appellants. Whereupon decree was entered and rendered on such findings. October 2, 1946, defendants appealed.

It appears from the record that John L. and Lora I. Michael were childless; that in the latter part of 1907 Johnson Jones, then a widower, and the father of respondent, Virgil Jones, a minor, spoke to John L. Michael about taking the boy Virgil; that Michaels said as long as they lived in town (Weiser) they would not be interested; but that they had not sold their ranch and, if they moved back they might consider taking the boy. Later, in 1908, the Michaels moved back to their ranch. After the Michaels moved back, Mrs. Michael told the father of respondent that Mr. Michael was going to be hauling wood and would be away from home, and that, if the father wanted them to, they would take the boy for company and to do chores; that the father immediately took the boy to the Michaels' home; that a few days later Mrs. Michael told the father she had forgotten about doctor bills; "that they [the Michaels] would not take care of that responsibility at that time"; that the father told her he would assume that responsibility.

It further appears that in the latter part of 1911 or 1912 Mr. Michael got sick; that he became irritable and nagged the boy to the point where the boy threatened to leave the Michaels; that Mrs. Michael then went to the father and asked him to persuade the boy to stay with them, saying she did not want the boy to leave because they had become attached to him and liked him, and that "when we get through with what we have got we want him [respondent] to have it"; that, accordingly, the father talked to the boy and persuaded him to stay; that the father did not remember whether he told the boy about the property, but said that he probably did; and the boy, upon the trial of the cause, did not remember whether his father told him, but that, after his father talked to him, he decided to, and did, continue to live with the Michaels.

It also appears from the record respondent lived with the Michaels as long as they lived on the ranch; that when they moved back to Weiser he went back with them; that the Michaels treated respondent as parents ordinarily treat a son and he treated them as a son ordinarily treats parents; that Mr. Michael died in respondent's arms; that the boy continuously lived with the Michaels until his marriage (1931), except for a time when he went to California and worked in a shipyard during the Second World War; that after marriage, respondent and his wife lived in an adjoining house; that the contract made by the father for the benefit of respondent was fully performed by respondent.

In limine, it is contended the trial court erred in overruling appellants' demurrer to respondent's complaint, "in that it is not alleged in the complaint that the services rendered by the plaintiff to the decedents were of such a nature that they could not be readily compensated for in damages". The allegations of the complaint, pertinent to a determination of that contention, are:

VI. "That the plaintiff Virgil R. Jones was born in the year 1899, and in 1905 his mother died, leaving Johnson Jones, the father of the plaintiff, with a number of little children, and said Virgil R. Jones, from the date of the death of his mother to 1908 stayed with the mother of Johnson Jones. In 1907 said Johnson Jones, knowing that John L. Michael and Lora I. Michael were childless and were people of considerable means and wanted children, sought them out and asked them if they would not take Virgil into their home to raise and care for as their child; that at the time said John L. Michael and wife, Lora I. Michael, were living in Weiser, he running a butcher shop, and they told Johnson Jones at that time that while they were living in town they would not be interested in taking the child to raise, but that they were thinking about moving back to the country and if and when they did do this they would be interested in taking the child; and in the following year 1908 said John L. Michael and wife, Lora I. Michael, sold out the butcher shop business in Weiser and moved up to a large ranch they owned on Manns Creek, and thereupon said John L. Michael and Lora I. Michael sought out the said Johnson Jones and reminded him of the former conversation and stated they were interested in taking the boy to raise, but they did not desire to commit themselves finally until they had given the boy a trial and they would like to take the boy a while and if he proved satisfactory they agreed to give him a permanent home and raise him as their own; that in this conversation the question came up about who would pay the expenses of doctor and medical bills in the event the boy should become sick during the period of time the Michaels had him on trial, and it was agreed that whatever doctor and medical bills were incurred

that they should be paid by said Johnson Jones.

VII. "That the custody of the plaintiff was taken over by said John L. Michael and Lora I. Michael and he continued from that time to live in the home with and as a member of the family of John L. Michael and Lora I. Michael until in the year 1912 when John L. Michael became in very ill health and was irritable and hard to live with, and at that time the plaintiff threatened to and was about to leave the Michaels' home and go back to his father to live. Thereupon in the year 1912 while the said John L. Michael was confined to his home by illness, the said Lora I. Michael, on behalf of herself and husband, came to said Johnson Jones on the street in Weiser and told him of the conditions in the home, how irritable her husband had become and that Virgil R. Jones had threatened to and was about to leave them and come back to the home of his father to live; that she told the said Johnson Jones, the father, that she and her husband had become very attached to said Virgil R. Jones and they considered him as their son and did not want him to leave, and she told him that if he, Johnson Jones, would agree to cause Virgil to not leave the home of the Michaels' but to continue to live there and make that *his permanent home, she and her husband, in consideration of his doing this, when the last one of them died, would leave all the property that they might have at the death of the last one

of John L. Michael and Lora I. Michael to the said Virgil R. Jones as their heir. This Johnson Jones agreed to do.

VIII. "That thereupon and in consideration of said promise so made at said time and place by the said John L. Michael and Lora I. Michael, acting by and through the said Lora I. Michael, said Johnson Jones did at once see the plaintiff Virgil R. Jones and told him of the agreement which he had made with the said John L. Michael and Lora I. Michael to the effect that if Virgil R. Jones would not leave the Michaels' home but would continue to stay there and make that his permanent home. when the last one of John L. Michael and Lora I. Michael died they would leave all of the property they then had to him, Virgil R. Jones, as their heir, and persuaded the said Virgil R. Jones to give up the idea of leaving and abandoning the Michaels' home.

IX. "That relying upon said agreement so made by the said John L. Michael and Lora I. Michael, acting by and through said Lora I. Michael, as hereinbefore set forth, with said Johnson Jones, the father of the plaintiff, the plaintiff did give up the fixed idea he then had of ceasing to live in the Michaels' home and did continue to live there as his permanent home and as a permanent member of the Michaels' family and performed all of the duties of a son and member of that home and gave to John L. Michael and Lora I. Michael his full love and affection, and rendered

all of the services in his power to make their lives happy and to make that a happy home, and that he did do this and continued as a member of that home up until after he was grown and became married in the year 19—. That later on the John L. Michaels family, including this plaintiff, moved from the ranch to Weiser, purchased a home on West Third Street and the plaintiff continued to live there with them as their son and permanent member of the family and was living there at the time of his marriage, and a home was built for him and his wife adjoining that of his foster father and mother and he continued to render as much affection, loyalty and services to the family as he could have done had he been their own blood son. That after the death of John L. Michaels and after December, 1941 and the episode of Pearl Harbor, this plaintiff, after talking with Lora I. Michael, his foster mother, and with her full consent, went to San Francisco and got a job in the shipyards as a carpenter, where he has been working in defense work ever since."

It was not necessary to allege, as contended by appellants, that the "services rendered by the plaintiff to the decedents were of such a nature that they could not be readily compensated in damages". To allege that, would be pleading a conclusion of both fact and law. It was sufficient, as to that matter, to allege the facts, as respondent did, that he lived with the Michaels, stating the facts and circumstances;

and that he gave them his full love and affection; and that the Michaels, in turn, became *"very attached"* to him, and *"considered him as their son"* (emphasis added); from which the conclusion follows that respondent's living with the Michaels as their son was of *value* to them—a *value* which could not be measured in money.

In White v. Smith, 43 Idaho 354, 370, 253 P. 849, 854, this court said: " * * * while the services performed in the home by respondent [White] in the way of household duties might possibly have been compensated in money, those things that respondent gave up and *the value of respondent living with the deceased as his child are impossible of measurement in money value, and the respondent can not be placed in statu quo* [emphasis added]. The only way possible of compensating respondent is by specific performance of the contract, or doing what the decedent wished and agreed to do, and the court did not err in decreeing specific performance of the contract." Cited, approved and adhered to in Andrews v. Aikens, 44 Idaho 797, 805, 260 P. 423, 69 A.L.R. 8.

It is also contended "Specific performance of an oral contract to devise lands in consideration of services rendered will not be decreed unless the plaintiff has taken possession of the land," citing, among others, the case of Andrews v. Aikens, supra. What this court actually held in that case was this: "The well-settled rule, therefore, is that an oral agreement to devise real es-

tate will be specifically enforced in equity, without reference to the statute of frauds, and regardless of the question whether or not the promisee has been in possession of the property, where the latter has fully complied with the contract [as in the instant case] and compensation for such services cannot be computed in an action at law; and hence to deny relief in equity by specific performance would result in the perpetration of a fraud on the promisee." 44 Idaho at page 805, 260 P. at page 425.

It is true, however, as further contended by appellants, "An oral contract to convey realty must be proved by clear, satisfactory, convincing and certain evidence"; and this court so held in Johnson v. Albert, 67 Idaho 44, 170 P.2d 403 (to which we adhere), and cases therein cited; but we held in Bedal v. Johnson, 37 Idaho 359, 218 P. 641, that in an action to specifically enforce an oral contract to will property (we quote from section 2 of the syllabus, which fully reflects the holding of the court): " * * * the rule that the terms and existence of the contract must be proven by clear and convincing evidence is one primarily for the trial court, and if the trial court finds on substantial or conflicting evidence that such rule has been complied with, its finding will not be disturbed on appeal." Cited, quoted and adhered to, in Andrews v. Aikens, 44 Idaho 797, 804, 260 P. 423, 69 A.L.R. 8.

Andrew Johnson Jones (father of respondent) testified, when asked whether he mentioned "anything to him" (respondent) about "the property,": "Well, I probably did, but do not just remember to that; but, I advised him to stay". And respondent testified he did not recall his father telling. about receiving the property. Appellants insist the judgment, therefore, must be reversed.

It is not essential, in order to enable a third person to recover on a contract made for his benefit, that he knew of the contract at the time it was made. McDonald v. Finseth, 32 N.D. 400, 155 N.W. 863, 865, L.R.A. 1916D, 149; Beattie Mfg. Co. v. Clark, 208 Mo. 89, 106 S.W. 29; Baurer v. Devenis, 99 Conn. 203, 121 A. 566, 81 A. L.R. 1286.

Our statute, sec. 5-301, I.C.A., seems to recognize the general rule, that a third person may enforce a contract made for his benefit. It provides: (Sec. 5-301, supra) "Real party in interest.—Every action must be prosecuted in the name of the real party in interest, * * *."

In the case at bar, the third person, respondent, is not only the real, but the only, party in interest.

The record shows when respondent first went to live with the Michaels, they took him on trial; that his father agreed to be responsible for his "doctor bills"; that, in the course of time Mr. Michael became irritable with him, frequently "nagging" the boy; that the boy threatened to leave; that Mrs. Michael went to the boy's father and, in substance, offered, if the father

would persuade the boy to stay, they would leave what property they had left to him; that the father talked to the boy and persuaded him to, and he did, stay. That proposition amounted to an offer, which, when accepted, as it was, constituted a contract.

It is true John Michael willed all his interest in the property (community) to his wife, Lora Michael, without mentioning respondent; but, instead of militating against the right of Mrs. Michael to act for both, in making the contract in question, strongly supports that right, in that it vested in her the title to all the property of the community, and that, in turn, put Mrs. Michael in a position to perform the contract made with the father of respondent.

It is also true there is a sharp conflict in the evidence. Appellants draw attention to certain of the testimony: That Mrs. Michael said she wanted respondent to have certain property on West Third Street in Weiser; that she wanted Mrs. Maude Baker to have the "other house"; that after Mrs. Michael died respondent went to Mrs. Viola Wallen for a statement, and that she gave him a statement to the effect that Mrs. Michael wanted respondent to have only the property on West Third Street; that Mrs. Michael said "When she got old she did not know who would take care of her; and if she would deed all her property to the Odd Fellows, they would take care of her"; that Mrs. Michael said they had given respondent a good home and that they did not owe him anything; that respondent's father had refused to permit the Michaels to adopt respondent; that Mrs. Michael said "she had left Virgil Jones (respondent) her insurance in the Snake River Valley Benefit Association"; that "We gave him the land and John built the house for him," and she said, "I do not figure we owe him anything more."

■ This court has repeatedly held that, where there is a substantial conflict in the evidence (as in the instant case), the findings and judgment of the trial court will not be disturbed. Syster v. Hazzard, 39 Idaho 580, 229 P. 1110; Rogers v. Crockett, 41 Idaho 336, 238 P. 894; Russell v. Boise Cold Storage Co., 43 Idaho 758, 254 P. 797; Webster v. McCullough, 45 Idaho 604, 264 P. 384; Boomer v. Isley, 49 Idaho 666, 290 P. 405; Isaak v. Journey, 52 Idaho 392, 15 P.2d 1069; Intermountain Ass'n of Credit Men v. N. H. Hallstrom Coal Co., 53 Idaho 151, 22 P.2d 686; Reinhold v. Spencer, 53 Idaho 688, 26 P.2d 796; California Jewelry Co. v. McDonald, 54 Idaho 248, 30 P.2d 778; Carrey v. Secesh Dredging, etc., Co., Inc., 55 Idaho 136, 39 P.2d 772.

■■ Furthermore, this court has uniformly held, while different minds might reach different conclusions on the evidence, that, where such is the case, however meager the evidence, if it is of a substantial nature and character (as in the case at bar), the findings of the trier of fact should prevail. Smith v. Clearwater Coun-

ty, 65 Idaho 271, 278, 143 P.2d 561; Estate of Randall, 58 Idaho 143, 146, 70 P.2d 389; McKissick v. Oregon Short Line R. Co., 13 Idaho 195, 89 P. 629; Fleenor v. Oregon Short Line R. Co., 16 Idaho 781, 803, 102 P. 897; Denton v. City of Twin Falls, 54 Idaho 35, 43, 28 P.2d 202; Call v. City of Burley, 57 Idaho 58, 69, 62 P.2d 101.

Judgment affirmed. Costs awarded to respondent.

BUDGE, C. J., and GIVENS and MIL-LER, JJ., concur.