[No. 24369. Department Two. April 10, 1933.]

FANNIE K. FULLER, *Respondent*, v. RALPH D. DEACON, *Appellant*.[1]

*Edward M. Hay, J. Speed Smith*, and *Poe, Falknor, Falknor & Emory*, for appellant.

*Chas. A. Wallace*, for respondent.

MAIN, J.—This action was brought to recover one-half of an insurance commission. The defendant denied liability and pleaded an affirmative defense. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $24,479.21. The defendant moved for a new trial, which motion was overruled, and judgment was entered upon the verdict, from which he appeals.

The facts essential to be stated are these: Ralph D. Deacon was the branch manager in charge of the office of the Western Union Life Insurance Company at Seattle. A. R. Fuller was an agent or salesman of the company, and worked on a commission basis. Sometime during the year 1924, the appellant received from the insurance company's representative at Wenatchee information to the effect that the Puget Sound Power

[1]Reported in 20 P. (2d) 843.

& Light Company might be interested in some form of group insurance covering its officers and employes, of which it had a large number. After making some inquiries with reference to this information, the appellant designated Fuller to pursue the inquiry. From that time until his death, which occurred December 13, 1925, Fuller worked upon the matter to a considerable extent, but did not devote all of his time thereto.

The appellant also, during this time, conferred repeatedly with a representative of the power company who was handling the matter. At the time of Fuller's death, the matter had developed to the point that the power company was seriously considering some form of group insurance for its officers and employes which would take the place of a pension plan. After the death of Fuller, the appellant took charge of the matter. After months of work a plan was developed which was satisfactory to the power company. There was no standard form of policy which would meet the requirements, and a great deal of detail work was necessary. After the plan was consummated, the power company called for bids, and fourteen insurance companies bid for the business. The policy was awarded to the Western Union Life Insurance Company because, as the officer of the power company testified, that company submitted the best bid. The policy issued was dated September 15, 1926, but a tentative contract had been entered into in July previously.

Mrs. Fuller, the respondent, shortly after her husband's death, called to see the appellant, and, as she says, it was orally agreed between them that, if she would pursue the matter and secure the contract for the Western Union Life Insurance Company, the appellant would give her one-half of the commission which he earned. Upon the trial, the respondent testified as to the terms of this agreement, and the appel-

lant unequivocally denied having made any such arrangement.

In April, 1926, the appellant wrote the respondent a letter, after the matter of dividing the commission had been further considered, in which it was said:

"This letter is written for the purpose of assuring you that I will share equally with you the overwriting which is the balance of commission remaining after paying the salesmen, the expense to be divided equally between us, the division of commission to also apply to renewal premiums. . . ."

When the insurance contract was made, the company contemplated putting a number of salesmen in the field to interview the employes of the power company for the purpose of securing their applications. The officers of the power company objected to this method of securing the applications of its employes, and as a result the insurance company designated for this work the appellant and one F. C. Rowell, and these two men wrote a large number of policies, for which they received the commissions.

Under the plan as required by the power company, there was no overwriting commission, as is specified in the letter from which an excerpt is quoted. Upon the trial, the appellant offered to prove that he and Rowell and the respondent entered into an oral agreement by which the respondent was to be paid one-fourth of the first year's commission on business written between October 1, 1926, and October 1, 1927, less one-third of the expenses incurred in connection therewith; and that subsequently, on April 15, 1927, this latter agreement was confirmed by letter of the appellant to the respondent, which she approved. This offer of proof was in support of the appellant's affirmative defense, and was rejected by the court. Whether the testimony was properly admissible is the principal question presented upon this appeal.

The respondent says that the evidence was properly excluded, because, if received, it would have modified a contract fully executed by the respondent without showing an independent consideration. For the purpose of the consideration of the question presented, it will be assumed, though we think the fact is otherwise, that, when the insurance policy was written, the oral contract upon which the respondent relies became executed, so far as she was concerned.

That contract, as stated, is claimed to have been made in December, 1925. In April, 1926, if there was such a contract, it was interpreted by the parties as applying to the commission for overwriting only. It was the only commission that the appellant would have received as manager of the Seattle office of the company. This was prior to the time that the oral contract became executed by the respondent, if it ever did become executed. Subsequently, the power company refused to permit the insurance to be written in a way that would have given the overwriting commission to the appellant, and he became one of the solicitors. After this was done, as the offer of proof indicates, the parties entered into a definite agreement with reference to the sharing in the commission of the appellant, and for some months the respondent was paid in accordance with such agreement and received approximately thirty-four hundred dollars.

The respondent relies upon the rule that, where a contract remains executory on both sides, an agreement to annul on one side is a consideration for the agreement to annul on the other; but if, on the other hand, the contract has been executed on one side, an agreement to modify without a new consideration will not be binding. *Tacoma & Eastern Lumber Co. v. Field & Co.,* 100 Wash. 79, 170 Pac. 360. But that rule is not here applicable. If the agreement upon which

the respondent relies was made, it applied only to the overwriting commission, and there was no such commission earned. The appellant, in response to the requirements of the power company, having gone into the field as a solicitor of the employes, was not earning overwriting commission, but a commission on sales, which was something entirely different. The offer of proof went to the agreement of the parties as to how this commission should be divided. If the modified agreement, as shown by the offer of proof, was fully executed, a question which we do not decide, it would be controlling, even though there was a want of consideration therefor. *Vigelius v. Vigelius,* 169 Wash. 190, 13 P. (2d) 425. The evidence offered should have been received.

The appellant also complains of the argument of respondent's counsel to the jury, and says that it was "inflammatory and prejudicial." But this question was incidental to the particular trial, and in all probability the argument to the jury upon another trial will be more temperate. It may be said in this connection that the language complained of at least closely approaches the danger line.

The judgment will be reversed, and the cause remanded with directions to the superior court to grant a new trial.

BEALS, C. J., STEINERT, BLAKE, and TOLMAN, JJ., concur.