(No. 7080. November 17, 1943.)

BUD M. NELSON and CORA F. NELSON, husband and wife, Respondents, v. KYLE ALTIZER and FLORENCE M. ALTIZER, husband and wife, Appellants.

[144 Pac. (2d) 1009.]

On Rehearing January 25, 1944.

Frank F. Kibler for appellants.

Creed W. Mullins and Karl Jeppesen for respondents.

AILSHIE, J.—This is an appeal from a judgment in favor of respondents, directing compliance with and specific performance of an escrow agreement.

Numerous errors are assigned but they reduce themselves to two classes: First, that the evidence is insufficient to support the judgment; and secondly, that the court erred in failing to make findings on certain issues tendered by the cross-complaint.

It appears that respondents held a lease on the premises

here involved coupled with an option to purchase. Before the expiration of the lease, and about the month of August, 1941, they entered into oral negotiations looking to the sale by appellants and the purchase by respondents of the real property in question; and it was agreed by the parties that the purchase price should be $2500 for the property clear of all encumbrances. About the 4th of September, 1941, respondents arranged with the Home Federal Savings and Loan Association (hereinafter designated as Loan Company) of Nampa, to make them a loan of $2500; and they accordingly executed their promissory note in favor of the Loan Company and secured the same by a mortgage on the premises they had agreed to purchase from appellants. Thereafter, and on September 15, 1941, the parties all met at the Loan Company's office in Nampa and appellants executed their warranty deed to the premises and delivered it to the Loan Company in escrow, with the oral agreement and understanding, that the Loan Company should pay off all outstanding liens and encumbrances against the property out of the $2500 secured by the execution of the promissory note, and pay the balance to appellants and deliver them the deed.

It appears that, at the time of the execution of this deed and its delivery to the escrow holder, there was outstanding against the property taxes and assessments aggregating approximately $112.00, two mortgages in favor of the College of Idaho, each for $500.00, with accrued interest, and a justice court judgment for about $83.93.

It is not clear from the record as to whether all these items were enumerated and discussed at the time of the execution of the deed and its delivery in escrow; but it is quite certain that the Loan Company was to clear the title, so that an abstract thereof would meet the requirements of the attorney who was to examine it and pass an opinion as to the sufficiency of the title. It was further understood, at the time of the execution of the deed, that appellants would call at the Loan Company's office September 19th for whatever money was left for them after the satisfaction of these several liens and encumbrances. They failed to call for the money on the date agreed upon but later Mr. Altizer did call for the money and was furnished, by the Loan Company, a statement of the outstanding obligations against the property and was tendered the balance remaining after satisfaction of the lien claims. Altizer refused to

accept the money and notified the Loan Company that he would not go through with the deal. Shortly thereafter this suit was filed against the Altizers and the Loan Company, to compel the company as escrow holder to carry out and perform the requirements of the escrow agreement and to deliver the deed to respondents, as the purchasers of the premises.

There is very little substantial conflict of evidence in the case. It is admitted that the Altizers agreed to sell the property for $2500 and executed and delivered the deed to the Loan Company in escrow. The only conflict, which is more theoretical than real, arises out of an apparent difference between them over the payment of a judgment rendered in the justice's court, transcript of which had been filed in the district court.

The Altizers both admit that the taxes were to be paid out of the $2500; and Mr. Altizer denied on the witness stand, that the College of Idaho mortgages were to be paid out of the $2500; but there is substantial evidence to support the contention that he did so agree and that the expense of abstract and opinion of an attorney was to be paid for out of this purchase price; and that the title was to be cleared before any money should be paid over to appellants. The deed executed and delivered to the escrow holder contains full warranty. This bound the vendors to furnish a *clear and marketable title.* (*Blaine County Canal Co. v. Mays et al.,* 65 Ida. 190, 142 P. (2d) 589 and cases therein cited.

Appellants urge that there was a lack of mutuality of contract, for the reason that the parol agreements and understandings between the parties, had prior to the execution of the deed, were not reciprocal or mutual and not binding upon both parties. It seems clear, however, that these conversations were simply the negotiations which culminated in the written contract, namely, the executed deed which was placed in escrow under a parol escrow agreement.

While a deed must be in writing, executed and acknowledged by the grantors, here husband and wife, the delivery of the deed—absolute or in escrow—is not required to be in writing. (19 Am. Jur., p. 422, sec. 6, p. 424, sec. 8; *Manning v. Foster,* 49 Wash. 541, 96 P. 233, 18 L.R.A., N.S., 337, 126 Am. St. R. 876, 16 Ann. Cas. 95.) Delivery is necessarily an act extraneous and subsequent to the

writing and does not appear therein. (*Whitney v. Dewey,* 10 Ida. 633, 655, 80 P. 1117, 69 L.R.A. 572; *Reed v. Reed,* 117 Me. 281, 104 Atl. 227, 230.)

It is also suggested that this was a transaction involving community property in which husband and wife must join. The requirement for joinder only extends to "executing and acknowledging." (Sec. 31-913, I.C.A.) After that is done, the husband may deliver the deed and collect the purchase price. (See *Hughes v. Thistlewood,* 40 Kan. 232, 19 P. 629, a case which is very similar to this on the question of delivery of deed and collection of purchase price and which has been widely cited and followed. See also *Craddock v. Barnes,* 142 N.C. 89, 54 S.E. 1003, 1006; 21 C.J., p. 888, sec. 34; 30 C.J.S., Escrows, sec. 13.

Let us next consider the complaint, that the court erred in failing to find on the allegations of the cross-complaint. The cross-complaint alleged that the plaintiffs were let into possession of the premises under a lease and option to purchase; and that they failed to surrender up possession at the expiration of their lease and were unlawfully holding over at the time they commenced this action.

It is true, that the court must find on all the material issues tendered by the pleadings. (*Cheesbrough v. Jensen,* 62 Ida. 255, 257, 109 P. (2d) 889; sec. 7-302, I.C.A.) The findings in all cases must cover the *material issues necessary to support a judgment.* (*Uhrlaub v. McMahon,* 15 Ida. 346, 97 P. 784; *Bentley v. Kasiska,* 49 Ida. 416, 288 P. 897.) This rule, however, is subject to a number of variations.

It has been held that, in order to raise the question as to failure of the court to find on an issue, the aggrieved party must call the matter to the attention of the trial court, either by a requested finding, motion, or otherwise; and that failure to do so is a waiver of the error, if any has been committed. (*Mine, etc., Co. v. Idaho, etc., Mines Co.,* 20 Ida. 300, 310, 118 P. 301; *Gould v. Hill,* 43 Ida. 93, 251 P. 167; *Reid v. Keator,* 55 Ida. 172, 184, 39 P. (2d) 926; *Mitchell v. Munn Warehouse Co.,* 59 Ida. 661, 674, 86 P. (2d) 174.)

There is another variation from the rule which is recognized, to the effect, that failure to find on all the issues of the case will not result in a reversal of the judgment, if the findings made by the trial court are inconsistent with

the theory advanced by the appellant or presented by his pleadings and are, standing alone, sufficient to support the judgment. In other words, if the findings already made are inconsistent with the allegations and theory of appellant's case, the presumption will be indulged, that if findings had been made thereon, they would have been adverse to appellant. (*Stewart v. Stewart,* 32 Ida. 180, 184, 180 P. 165; *Reid v. Keator,* supra.)

The findings of the court in favor of respondents were in effect adverse findings upon the issues presented by the appellants' cross-complaint.

█ Complaint is made by appellants because the court failed to make findings as to the amount due on each of the liens and encumbrances against the property that were to be deducted from the purchase price by the Loan Company and applied in payment and satisfaction of such claims. The answer to that complaint is, that no issue was made by the pleadings as to the *amount* of the claims or any one thereof; and no dispute arose over the amount of these several liens; but the real controversy and dispute was over the question as to whether or not, under the escrow agreement, these claims (College of Idaho mortgages, taxes and assessments, and the justice court judgment), whether much or little, were to be paid out of the purchase price for these premises. The court found that the respondents' contention was upheld by the proofs and entered judgment accordingly. If the appellants desired to have the amount due on these claims determined in this suit, they should have made that an issue and submitted proof and asked for findings thereon.

The findings and judgment appear to be fully supported by the evidence, and the judgment should be affirmed, and it is so ordered. Costs awarded to respondents.

Holden, C.J., concurs.

Givens, J., concurs in the conclusion reached.

BUDGE, J., concurring and dissenting.—I concur in the majority opinion wherein it is held that the court did not err in failing to make findings of fact on certain issues complained of. Otherwise, I dissent for the following reasons.

Appellants were the owners of the real estate involved in this action. It was community property. Respondents were in possession under a lease and an option to purchase. Oral negotiations, principally between appellant Kyle Altizer and respondent Bud Nelson were carried on but were not reduced to writing. Sec. 16-505, subd. 5, I.C.A., provides:

"In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents.

\* \* \*

"5.   An agreement \* \* \* for the sale, of real property, or of an interest therein \* \* \*."

In the instant case, the oral negotiations, as above stated, were not reduced to writing, subscribed and acknowledged by the parties as required by sec. 16-505, supra, which being true evidence of the oral negotiations, in the absence of a written agreement executed and acknowledged were inadmissible and in such circumstances no action could be based thereon. It is conceded in respondents' brief that the oral negotiations or agreements carried on between the parties, or any of them, for the purpose of finally consummating the sale by the Altizers to the Nelsons of the real property is unimportant. Respondents rely only upon the agreement entered into on September 15, 1941, at which time appellants appeared in the office of the Loan Company and executed and acknowledged the deed of conveyance, which deed was delivered by appellants to the Loan Company or its agent Gilbert as escrow holder.

The question therefore arises: Did the execution and delivery of the deed to the escrow holder obviate the necessity of a compliance with sec. 16-505, supra? It will be observed that the deed contained no recital of the terms of the alleged oral agreement but merely a recital of the consideration. No stipulations as to any deductions to be made from the consideration were recited in the deed. However, respondents contend that the delivery of the deed, the placing of the same in escrow by oral agreement, the payment of the purchase price on September 15, 1941, in the office of the Loan Company constituted a fully executed contract of sale.

A careful analysis of the evidence discloses neither that the full purchase price recited in the deed nor any part thereof was paid to appellants or received by them at that time. The most that can be said is that the money had been conditionally arranged for. "To constitute payment, the money or consideration must pass for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose." (*Buhl Highway District v. Allred*, 41 Ida. 54, 73, 238 P. 298.) There being no part performance, the evidence was therefore insufficient to remove the transaction from the statute of frauds. (*Robbins v. Porter*, 12 Ida. 738, 88 P. 86.) It is further admitted that respondents had no money of their own on deposit with the Loan Company on September 15, 1941, with which to pay the purchase price recited in the deed. The fact is very apparent that the Loan Company agreed conditionally to make the loan of $2500 to respondents provided, and in the event only, that the title to the land was clear and that their mortgage would be a first lien on the real estate. It further appears that September 4, 1941, respondents executed and delivered to the Loan Company their note and mortgage in which the real estate in controversy was described; that the deed from appellants to respondents was not executed and delivered to the escrow holder until September 15, 1941.

Respondents and the Loan Company were at no time bound to carry out their part of the oral agreement and could have refused to have gone through with the deal leaving appellants without recourse. No memorandum or agreement having been signed by the parties to be charged, which would include both appellants and respondents, and the purchase price not having been paid or any part thereof on September 15, 1941, under the rule laid down in *Houser v. Hobart*, 22 Ida. 735, 127 P. 997, 43 L.R.A. (N.S.) 410, the agreement is void for "want of mutuality." There is no dispute that the Loan Company did not set up on its books, or place to respondents' credit, any money until September 30, 1941, and then conditionally.

"This case clearly shows the necessity of contracts being in writing where they concern real estate, and the legislature of this state, knowing the uncertainty which would attach to titles to real estate if they rested in the memory of man, in parol evidence, has wisely enacted what is known as the statute of frauds under the head of 'Indispen-

sable Evidence'." (*Thompson v. Burns,* 15 Ida. 572, 597, 99 P. 111.)

"To comply with such section, the writing must state the contract with such certainty that its essentials will be known from the memorandum itself or by reference contained in it to some other writing, without recourse to parol evidence." (Syllabus.) (*Thompson v. Burns,* supra.)

The bar of the statute of frauds in the absence of payment of the purchase price or part performance could not be removed by the execution and delivery of the deed to the escrow holder. (*Robbins v. Porter,* 12 Ida. 738, 88 P. 86.)

Appellant Kyle Altizer called at the Loan Company's office, several days after September 15, 1941, for his money. Gilbert showed him a preliminary statement enumerating certain sums that the Loan Company proposed to deduce from the $2500 to be loaned to respondents, and the balance which purportedly represented appellants' equity in the land. At that time, appellant Kyle Altizer stated he would not go through with the transaction. Clearly, the minds of the parties had not met, and there was no memorandum or agreement signed by the parties to be charged setting out the details of the oral agreement. As was said in *Baas v. Zinke,* 218 Mich. 552, 188 N.W. 512, "a mistake of one party of such a character that the minds of the parties cannot be said to have met, if clearly established, is ground for rescission." Under the facts of this case, Kyle Altizer rescinded the contract which he had a right to do. This point is well summarized in the following statement extracted from appellants' brief:

"It is perfectly apparent that the minds of the parties herein have never met upon any definite purchase price. We have, on the one hand, the respondents, claiming that they were buying this property for $2,500.00, being a price $700.00 less than they had agreed to pay for it under the option and lease referred to, and a situation, as contended by them, wherein the appellants would be required to pay the College of Idaho mortgage and all taxes and assessments, and the judgment. On the other hand, we have a situation of the appellant, Kyle Altizer, who had no objection to sale of the property to the respondents, but understood that he was selling it to respondents for $2,500.00 for their equity, less the amount of taxes, and the respondents to assume and pay the College of Idaho mortgage. This creates

at once a difference between the parties of over $1,000.00, and it is not within the bounds of good reason, common sense and reasonably sound business judgment to assume that the appellants would, in a short period of months, and while a bona fide lease was still in existence, offer to sell and dispose of their property for a purchase price of $700.00 less than the respondents had theretofore agreed to pay for it * * *."

This is an action in equity, not an action at law. Therefore equitable principles should be applied to the end that justice be done as between the parties. All moneys paid out by the Loan Company purportedly on behalf of appellants have been returned. To reverse the judgment would allow appellants to retain ownership of the premises. Respondents suffered no damage, paid no consideration, did not perform fully or in part, and were in no way damaged or prejudiced. No reciprocal liability ever existed.

The judgment should be reversed and no costs allowed.

Dunlap, J., deeming himself disqualified, did not sit at the hearing or participate in the decision.

## On Rehearing

## (January 25, 1944)

HOLDEN, C.J.—This case was originally heard October 5, 1943. November 17, 1943, the majority opinion was filed. December 3, 1943, appellants filed a petition for rehearing. December 6, 1943, the petition was granted. December 20, 1943, the cause was reheard. Appellants vigorously insist the agreement in question here being oral, is, therefore, invalid in that it was not in writing and that no note or memorandum of the same was signed by the parties to be charged (appellants), or by any agent of appellants, and that such oral agreement violates sec. 16-503 and sec. 16-505, subd. 5, I.C.A. These sections provide:

"[16-503.] Transfers of real property to be in writing. —No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the

party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

"[16-505.] Certain agreements to be in writing.—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents:

"1. * * *

"2. * * *

"3. * * *

"4. * * *

"5. An agreement * * * for the sale, of real property, or of an interest therein * * *"

The question thus presented was also presented to this court in *Robbins v. Porter*, 12 Ida. 738, 88 P. 86. In that case it appears it was orally agreed between Robbins and Porter that the former was to procure deeds to certain real estate located in Asotin County, Washington, and that the latter was to pay Robbins for his services in procuring the deeds. Subsequently, a second agreement was made whereby Porter agreed to convey to Robbins a small tract (3½ acres) of land located in Nez Perce County, Idaho. Porter and wife executed a deed to the Idaho tract and left it with the attorney who prepared it. No escrow agreement was signed. A dispute arose between the parties as to what deeds Robbins was to procure and from whom. Delivery of the deed to the Idaho property being refused, Robbins brought suit against Porter and wife to compel specific performance. On appeal to this court it was contended by Porter that: " 'This contract (referring to the agreement involved in that case) is not based upon any written instrument or any promise whereby any part of the consideration was paid, or any memorandum in writing signed by the parties to the action.' "

It will be noted Porter contended his deed to Robbins was not a sufficient note or memorandum to take the transaction out of the statute, and as above pointed out, this is the same contention made by appellants in the case at bar. This court held squarely against Porter's contention:

"A deed properly executed and left with the attorney of the grantor of real estate is sufficient to remove the bar of

the statute of frauds in an action for specific performance where the purchase price has been paid."

And in the Robbins-Porter case, supra, it was further held:

"A complaint that fully sets out the contract for the conveyance of real estate, *although the original contract was verbal* (as in the case at bar), that is afterward merged into a different contract *which is evidenced by a deed* (as in the instant case) left in the hands of the attorney of the grantor for inspection of the grantee, is sufficient upon which to base a judgment for specific performance." (Emphasis ours.)

It is next vigorously insisted by appellants that:

"The evidence is not only in substantial conflict, but is in irreconcilable conflict over the principal matter involved in the litigation, that is, the purchase price to be paid for the involved property."

This court has repeatedly held where there is a substantial conflict in the evidence the verdict, or findings, as the case may be, will not be disturbed. (*Syster v. Hazzard,* 39 Ida. 580, 229 P. 1110; *Rogers v. Crockett,* 41 Ida. 336, 238 P. 894; *Russell v. Boise Cold Storage Co.,* 43 Ida. 758, 254 P. 797; *Webster v. McCullough,* 45 Ida. 604, 264 P. 384; *Boomer v. Isley,* 49 Ida. 666, 290 P. 405; *Isaak v. Journey,* 52 Ida. 392, 15 P. (2d) 1069; *Intermountain Ass'n. v. Hallstrom C. Co.,* 53 Ida. 151, 22 P. (2d) 686; *California Jewelry Co. v. McDonald,* 54 Ida. 248, 30 P. (2d) 778; *Carrey v. Secesh Dredging etc. Co., Inc.,* 55 Ida. 136, 39 P. (2d) 772; *Hill v. Wilkinson,* 60 Ida. 243, 90 P. (2d) 696; *Gore v. Richard Allen Mining Co.,* 61 Ida. 622, 105 P. (2d) 735; *Stallinger v. Johnson,* 65 Ida. 101, 139 P. (2d) 460, 464.)

And appellants further contend "there must be a mutual meeting of the minds on the terms of the agreement," and that the agreement involved in the case at bar was made under a mutual mistake of facts and that it is, therefore, void. It is well settled in this jurisdiction that all issues of fact must be determined by the trier of the facts, so that whether there was a meeting of the minds of the respective parties or whether "the principal amount of the College of Idaho mortgages, $1,000, was proposed to be withheld from settlement," that is to say, deducted from the purchase price, as well as all other controverted ques-

tions of fact, were issues for the trial court to determine, and the court having found against appellants on all such issues, and there being a substantial conflict in the evidence, we repeat, the findings of the trial court will not be disturbed.

▪ Furthermore, where the facts "might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character (as in the instant case), the findings of the triers of fact should prevail." (*McKissick v. Oregon Short Line R. Co.*, 13 Ida. 195, 89 P. 629; *Fleenor v. Oregon Short Line R. Co.*, 16 Ida. 781, 803, 102 P. 897; *Denton v. City of Twin Falls*, 54 Ida. 35, 43, 28 P. (2d) 202; *Call v. City of Burley*, 57 Ida. 58, 62 P. (2d) 101, 105; *Dickey v. Clarke*, 65 Ida. 247, 142 P. (2d) 597, 602.)

For the above stated reasons we adhere to the original opinion.

Ailshie, J.; Givens, J., and Porter, D.J., concur.

Dunlap, J., feeling himself disqualified, did not sit at the hearing or participate in the opinion on rehearing.

BUDGE, J., dissenting.—I adhere to the views expressed in my dissenting opinion heretofore filed.

In my opinion, the facts in the case of *Robbins v. Porter*, 12 Ida. 735, 88 P. 86, are not similar or in any way parallel to the facts in the instant case. Robbins v. Porter was referred to and relied upon in the minority opinion to support the rule that there being no part performance of the alleged oral contract, or payment of any part of the purchase price, the evidence was insufficient to remove the transaction from the Statute of Frauds. In Robbins v. Porter, the land had been surveyed for description, a tenant was in possession, and while he paid the rent to the grantor, the grantor paid the rent to the grantee and placed the grantee in possession. As stated in the dissenting opinion, no part of the purchase price had been paid by Nelson to Altizer. Nelson was in possession under his lease but the option to purchase had expired.

The Loan Company had no money of Nelson's and actually tendered no money to Altizer at the time the deed

was left with the escrow holder, or at any other time. The position of the Loan Company simply was that if the title proved to be satisfactory it would make the loan. It was not legally bound to make the loan, but at all times reserved the right to refuse to make the loan for any reason, appearing to it, which would make the loan inadvisable; and for that purpose it was investigating the title. Under the facts of this case, Altizer had a legal right at any time before receiving the consideration or any part of it to withdraw the deed from the option holder and refuse to proceed further in the transaction. In Robbins v. Porter, the purchase price had actually been paid. In the instant case, the purchase price had not been paid or any part of it; nor did the grantee have possession as owner. He was simply a lessee. There is no conflict in the evidence upon this point. Therefore, the rule sought to be invoked that where there is a substantial conflict in the evidence the judgment will not be disturbed, has no application.

As I understand the record, there was no meeting of the minds of the parties touching the payment of the $1000 mortgage to the College of Idaho, which I think is clearly established by the record. Conceding it to be true that Altizer admitted that the debt to the College of Idaho was to be paid, he did not testify by whom the debt was to be paid, except that it was not to be deducted from the $2500, and the evidence to my mind is insufficient to support the contention that it was to be so deducted.

The real conflict between the parties involved the payment of the $1000 obligation to the College of Idaho, not the judgment rendered in the Justice's Court for the minimum sum of $83.93.

The contract was unenforceable for want of mutuality, there being no reciprocal remedy. As was said in *Houser v. Hobart,* 22 Ida. 735, 127 P. 997, in the syllabus:

"An agreement entered into between competent parties, in order to be binding, must be mutual, and this is especially true when the consideration consists of mutual promises, and if it appears that one party never was bound on his part to do the acts which form the consideration for the promise of the other, the agreement is void for want of mutuality.

"The rule of law that a promise is a good consideration for a promise requires that there should be an absolute

mutuality of engagements so that each party may have an action upon it or neither will be bound."

Altizer had no remedy against Nelson. The latter had signed no written memorandum containing the oral contract or otherwise legally bound himself to perform the alleged oral contract. All that he had done was to tentatively and conditionally make arrangements with the Loan Company to advance the purchase price of the real property, provided the Loan Company concluded so to do after investigating the title, which was but an oral and conditional agreement upon the part of the Loan Company. He executed a note and mortgage on the premises before he had title to it and before the deed of Altizer's had been executed and placed with the escrow holder, and he could have withdrawn the note and mortgage and refused to go farther in completing the transaction.

It was also void because it fell within the Statute of Frauds as pointed out in the dissenting opinion.

I am still convinced that in the administration of equity and justice, the judgment should be reversed.