[No. 31460. Department Two. January 12, 1951.]

HAROLD O. MEYER, *Appellant*, v. BERT A. STROM *et al.*, *Respondents*.[1]

[1] Reported in 226 P. (2d) 218.

*Medley & Haugland,* for appellant.

*Karr, Tuttle & Campbell,* for respondents.

HAMLEY, J.—Harold O. Meyer, the lessor of certain well-drilling equipment, brought this action to recover damages in the sum of $909.99, for a breach of the written lease agreement. The lessee, Bert A. Strom, and Strom's wife, as defendants in the action, contested some of the items relied upon by plaintiff. They also filed a counterclaim seeking recovery for materials and services furnished to plaintiff. The effect of the answer and counterclaim was to seek a set-off of all sums admittedly due on the plaintiff's claim, and to obtain judgment in behalf of the defendants in the sum of $250.34.

The case was tried to the court without a jury. The court, in an able and extensive memorandum opinion, indicated that some of the items claimed by plaintiff would be disallowed, and that the items claimed by defendants on their counterclaim (as revised downward prior to the decision of the court) would be allowed in full. The complaint was accordingly dismissed, and judgment was entered for defendants in the sum of $145.44.

Plaintiff has appealed. Bert A. Strom will be referred to as though he were the only respondent. Respondent was not represented at the oral argument before this court.

Meyer had been engaged in the business of drilling wells for water since 1930. In the fall of 1945, Strom began working as a driller in the employ of Meyer. By written agreement, dated April 19, 1946, Meyer leased certain well-drilling equipment to Strom. Paragraph 4 of the agreement, stating the terms of payment, reads as follows:

"The lessee agrees to pay to the owner as rental for the use of the said machinery that sum of money which is equal to one half of the gross income received from the hire or use of the said machinery and the income produced by the same. It is agreed that the rate charged for the use of the said machinery shall be not less than the sum of Six ($6.00) Dollars per hour. The lessee will pay at rate of $1.50 per ft. for 6″ wells and $2.00 per ft. for 8″ wells

plus cost of casing used in wells which is paid for by owner—price of casing to be as quoted on description of equipment."

Shortly after entering into the lease agreement, Meyer left for Alaska, where he remained until he returned to Seattle on October 28, 1946. In the meantime, on August 14, 1946, the lease agreement was terminated. On that date, Meyer sold to Strom the machinery, equipment, and remaining supplies.

Paragraph 6 of the lease agreement requires the lessee to "keep full, complete and accurate books and records." Strom furnished Meyer with a periodical accounting of work done, materials used, and money owing to Meyer. When Meyer returned to Seattle, a disagreement arose regarding some of these items, and this lawsuit resulted.

Appellant first assigns as error the disallowance of claimed rental in the amount of one hundred fifty dollars for the drilling of a well for Arthur Erickson.

In 1945, prior to the execution of the lease agreement, Strom, acting as the employee of Meyer, had drilled two wells for Erickson. Neither well struck water, and, at Erickson's request, the job was discontinued. Meyer's contract with Erickson provided that "the contractor does not guarantee water." Erickson paid Meyer for the work done, and the matter was apparently closed. In May, 1946, after the lease was entered into, Strom contacted Erickson and volunteered to drill another well in an attempt to find water. This was done, the well being drilled to a depth of one hundred feet. Strom did not charge Erickson for the work.

Meyer, who was then in Alaska, knew nothing of this transaction between Strom and Erickson until he received a letter from Strom, dated May 19, 1946. This letter advised Meyer that Strom had drilled a well for Erickson free of charge and that, therefore, appellant need expect nothing as rental for the machinery used in such drilling. Strom advised Meyer, in the same letter, that the total amount which was then due Meyer (including nothing on

the Erickson job) had been deposited to Meyer's bank account in Seattle.

Meyer made no objection to this in any of the several letters he thereafter wrote to Strom before returning from Alaska. When Meyer did return in October, 1946, he attempted to settle his account with Strom. However, his itemized statement submitted to Strom at that time contained no claim based on the Erickson drilling. This claim was first made on May 3, 1947, when Meyer asked for one hundred fifty dollars on this item. This figure was arrived at by multiplying the number of feet drilled (one hundred feet) by the contract rental of $1.50 per foot, as provided in paragraph 4, quoted above.

■ Respondent contends that the lease agreement between the parties is ambiguous as to whether Meyer would be entitled to rentals on a job where Strom received no "gross income." Accordingly, it is argued that, since the lessor drew the instrument, this ambiguity should be resolved in favor of Strom.

We do not believe that paragraph 4 of the lease, containing this "gross income" provision, is ambiguous. That provision plainly applies only where wells are drilled on an hourly basis. The only basis found in the evidence for computing the contract rate on the Erickson well, is the footage rate. With respect to this rate, it is immaterial, under paragraph 4, whether or not Strom received any gross income from the work. Even had it been possible to compute this item on an hourly basis, the fact that Strom received nothing from Erickson would be immaterial. This is true because the lease provision relating to the hourly rate requires the lessee to charge not less than six dollars an hour.

Respondent also advances the argument that Meyer's failure to object, upon receiving Strom's letter stating that no rental would be paid on this item, and Meyer's acceptance of amounts deposited to his credit in a Seattle bank after receiving this advice from Strom, amount to an accord and satisfaction.

■ An accord and satisfaction is founded on contract. *Seattle Investors Syndicate v. West Dependable Stores*, 177 Wash. 125, 30 P. (2d) 956; *Graham v. New York Life Ins. Co.*, 182 Wash. 612, 47 P. (2d) 1029; 2 Restatement, Contracts 785, § 417; 1 Am. Jur. 217, Accord and Satisfaction, § 4. Therefore, to create an accord and satisfaction there must be a meeting of minds of the parties upon the subject and an intention on the part of both to make such an agreement. *Graham v. New York Life Ins. Co.*, *supra*, and cases there cited; 1 Am. Jur. 222, *supra*, § 21.

There is no showing here that the payments by Strom were made upon condition that the amounts be accepted in discharge of some larger sum. As a matter of fact, at the time the payments were made Meyer had not yet asserted a claim to a larger sum. The payment and acceptance of sums admittedly owed could hardly evidence a meeting of minds on the terms of an accord and satisfaction pertaining to a dispute which had not yet arisen.

■ An accord and satisfaction must also, as in the case of any other contract, rest upon consideration. *Katich v. Evich*, 161 Wash. 581, 297 Pac. 762; *Seattle Investors Syndicate v. West Dependable Stores, supra*. Here the only purported consideration was the payment of undisputed items which the lessee admittedly owed. It has long been the rule in this state that payment of an amount admitted to be due can furnish no consideration for an accord and satisfaction of the entire claim. *Seattle, Renton & Southern R. Co. v. Seattle-Tacoma Power Co.*, 63 Wash. 639, 116 Pac. 289; *Seattle Investors Syndicate v. West Dependable Stores, supra*; *Graham v. New York Life Ins. Co., supra*. See, also, 2 Restatement, Contracts 785, § 417, comment a; 1 C. J. S. 502, Accord and Satisfaction, § 29.

■ The evidence as to the Erickson transaction was not in conflict. Hence there is no room for the application of our familiar rule that the findings of the trial court will not be disturbed unless the evidence clearly preponderates against those findings. The only question before us is whether the trial court, in disallowing this item, drew the

proper conclusions from this undisputed evidence. *Shultes v. Halpin*, 33 Wn. (2d) 294, 205 P. (2d) 1201.

Strom did this work for Erickson without charge because the two wells drilled under Meyer's contract with Erickson turned out to be useless. However, Meyer had not guaranteed that these wells would reach water. He had been paid off, and the Meyer-Erickson deal had been closed several months. Thus Strom's act in drilling a new well for Erickson did not benefit Meyer. Strom was at liberty to donate his own services, but he had no right to give Erickson the free use of Meyer's well-drilling equipment. In our view, this item should have been allowed.

Appellant next assigns as error the disallowance of his claim for one hundred fifteen dollars, representing the purchase price of one hundred feet of casing pipe alleged to have been used in the Erickson well.

The minimum price which Strom was to pay Meyer for casing under the lease agreement was $1.15 per foot. One hundred feet of casing was used in the Erickson well. Meyer claimed that the casing used in the Erickson well belonged to him. This was denied by Strom.

In contending that the trial court erred in disallowing this item, Meyer points to Strom's letter of May 19, 1946, indicating that the Erickson well was drilled prior to that date; Strom's testimony that he purchased his first casing from outside sources in May, 1946, from the Pump and Equipment Company; and the testimony of the owner of that company that his records showed this purchase was made on May 25, 1946. From these facts, appellant reasons that Strom must have used Meyer's casing in the Erickson well.

Strom testified categorically that Meyer's casing was not used in that well. The periodical accountings which Strom made to Meyer did not list any casing as having been used in the Erickson well. Respondent also suggests that the date referred to in the records of Pump and Equipment Company may have been the billing date and not the delivery date, which might have been earlier.

■ We are unable to say that the evidence clearly preponderates against the findings of the trial court. Accordingly, we sustain the trial court with respect to these assignments of error.

The trial court allowed in full Strom's counterclaim for five hundred twenty dollars for services rendered in connection with a well drilled for Mr. Day Karr. Appellant assigns this action as error, asserting that there was no contract between Meyer and Strom which could be the basis of any claim involving the Karr well. Meyer also contends that, in any event, the reasonable value of the services performed by Strom does not exceed one hundred twenty-five dollars.

Meyer drilled a one-hundred-foot well for Karr in September, 1945. The contract provided that Meyer would install a screen, if this were agreed upon by both parties, the additional charge to be determined by the parties. After the drilling was completed, Meyer tested the well and decided that no screen was needed at the bottom. The well was then capped, Karr paid Meyer for the drilling, and the job was considered completed.

The following spring, after Meyer had leased his equipment to Strom and had gone to Alaska, Karr had a pump installed in the well. It was then found that the well had "sanded up" and that water could not be obtained. Karr then requested Strom to make the necessary correction. Strom agreed to do so, indicating in his testimony that he did this as a courtesy to Meyer. Strom cleaned the well out and installed a screen. Thereafter the pump was again attached, but failed to draw water properly. In an attempt to pull the screen out, a hook broke in the screen and Strom was unable to pull the screen out.

It was then decided to discontinue the job until Meyer returned from Alaska. When Meyer returned from Alaska on October 28, 1946, he learned for the first time that water had not been obtained from the Karr well, and that Strom had experienced difficulties in trying to get the well to function. After Meyer had returned, Strom

contacted him and told him of the situation at the Karr well. Meyer testified that he agreed to help Strom and did not intend to charge him. Meyer also testified that he called Karr and said that he (Meyer) would be glad to help repair the well.

Meyer and Strom started out to the site together on one occasion, but never arrived there because of inclement weather. Meyer testified that a few weeks later Strom called and asked him if he would help Strom repair the well on that day. Meyer, according to his testimony, replied that he could not help on that day but could do so the next day. Strom testified that on this occasion Meyer requested him to go out and "fix" the well. Following this conversation, Strom went to the site, pulled the casing, and drilled a new well two feet away from the first well.

Strom later discussed with Meyer the matter of compensation for this work, but they were unable to come to an agreement. Meyer sent a statement to Strom on May 3, 1947, in which he indicated an allowance of one hundred twenty-five dollars for this work on the Karr well. Meyer testified that this sum represents the reasonable cost of installing a screen in the first Karr well, under the conditions then existing. It was Meyer's view that the casing in the first well should have been pulled back a few feet and the screen installed, rather than to go to the expense of pulling out the casing entirely and drilling a new one-hundred-foot well two feet away. Appellant interprets this offer not as an admission of liability, but as a compromise offer to settle a disputed claim.

Strom was apparently not satisfied with this figure, and on November 6, 1947, submitted a statement to Meyer for this work, as follows:

"24 hr. at $6.00 pr hr work fixing Karr's well....$144.00
"8 hr at $6.00 pr hr pulling 100 ft of casing...... 48.00
"100 ft of drilling at $4.00 per ft................ 400.00

$592.00
Less one screen..................... 72.00

$520.00"

■ We will first consider that part of the work on the Karr well which was performed *after* Meyer returned from Alaska. The testimony is in conflict as to whether Meyer, after his return, requested Strom to go to the site and "fix" the well. We cannot say that the evidence preponderates against Strom's version that Meyer did make this request pursuant to some arrangement between Meyer and Karr. Nor can we say, on the basis of this record, that Strom was not authorized to take whatever steps he felt were necessary to correct the situation, including the drilling of a new well. It is therefore our view that the evidence does not clearly preponderate against the finding, implicit in the trial court's decision, that Meyer contracted to have Strom perform this work.

This being so, the one-hundred-twenty-five-dollar payment proposed by Meyer would clearly be inadequate, since it was predicated on the cost of installing a screen in the original Karr well. The trial court was well informed as to the actual work involved in pulling the casing out of the first well and drilling the new well. The court determined that the amount Strom charged for this work (forty-eight dollars for pulling the casing, and four hundred dollars for drilling one hundred feet of well) was reasonable. We see no reason for disturbing that finding.

With respect to the work performed by Strom on the first Karr well before Meyer returned from Alaska, a different question is presented. There was no express contract between Meyer and Strom at the time this work was performed, as Meyer did not even know there had been any difficulty with that well. For exactly the same reason, there could have been no implied contract covering this work. The circumstances existing at the time Strom did this original work, with Meyer in Alaska and uninformed, certainly do not show a mutual intention on the part of the parties to contract with each other, as would be required to establish an implied contract. See *Ross v. Raymer*, 32 Wn. (2d) 128, 201 P. (2d) 129, and authorities

there cited. Strom himself testified that he did this work as a courtesy to Meyer.

We therefore hold that one hundred forty-four dollars of the item involving the Karr well, representing work performed before Meyer returned from Alaska, should have been disallowed. The remaining three hundred seventy-six dollars of this five-hundred-twenty-dollar item was properly allowed.

Paragraph 4 of the lease, quoted above, provides that the hourly rate to be charged for the use of the equipment would be not less than six dollars, and that the lessor would receive one half of this income as rental. It is undisputed that, shortly after execution of the lease, the parties orally modified this provision for the purpose of reducing the rental rate. At this time, Strom had received delivery of the equipment but had not used it on any jobs. Strom claims that the reduction in rental was from three dollars to two dollars an hour. Meyer asserts that the reduction was to $2.50 an hour, where the minimum six-dollar hourly rate was charged, and a proportionate rental (41.7% of the total charge) when the hourly charge exceeded six dollars.

Appellant contends that the modification reducing the rental is not binding, because not supported by consideration. He further argues that, assuming that the modification is binding, the reduced rates were as testified by him and not the still lower rates to which Strom testified. The trial court in effect rejected both of appellant's contentions, and declined to allow Meyer additional sums on either of these bases. Appellant assigns this action as error.

The evidence is in conflict as to the lower hourly rental actually agreed upon. We have examined the testimony in this regard, and are convinced that it does not clearly preponderate against the implied finding in favor of respondent.

Appellant's contention that the modification was not supported by consideration and is therefore not binding, is also without merit. Under the lease, Strom was not

required to pay any rental unless he used the equipment. Although Strom had been given possession of the equipment before the modification was agreed upon, he had not used it, was not obliged to use it, and incurred no rental liability until he did use it. The lease was therefore still executory on both sides *at that time*. Under these circumstances, the original consideration was sufficient to support the subsequent modification. *Pacific Power & Light Co. v. White*, 104 Wash. 528, 177 Pac. 313; *Hunters Cattle Co. v. Carstens Packing Co.*, 129 Wash. 377, 225 Pac. 68; *Inman v. W. E. Roche Fruit Co.*, 162 Wash. 235, 298 Pac. 342. See, also, *Conlan v. Spokane Hardware Co.*, 117 Wash. 378, 201 Pac. 26, holding that an agreement for reduced rents amounts to an abrogation of the old agreement, and that mutual promises supply consideration for the new agreement.

■ Moreover, since the agreement, as modified, had been fully executed subsequent to the modification and prior to the suit, we would not, in any event, disturb it for a want of consideration. *Vigelius v. Vigelius*, 169 Wash. 190, 13 P. (2d) 425; *Fuller v. Deacon*, 172 Wash. 489, 20 P. (2d) 843.

The trial court disallowed Meyer's request for interest on the portion of his claim which Strom admitted owing. Appellant's last assignments of error complain of this action.

■ Interest was disallowed by the trial court on the ground that Meyer's claim was unliquidated. The principle is well established that where a claim is unliquidated, interest thereon is not allowed. *Brewster v. State*, 170 Wash. 422, 16 P. (2d) 813; *Fiorito v. Goerig*, 27 Wn. (2d) 615, 179 P. (2d) 316; *State v. Northwest Magnesite Co.*, 28 Wn. (2d) 1, 182 P. (2d) 643.

■ Meyer contends that Strom's cross-complaint relative to the Karr well involved a separate transaction, and that Strom admitted that $1,704.81 of Meyer's claim (on which Strom had paid $1,273.25) was well founded. Meyer reasons that the balance due on this $1,704.81 is therefore a liquidated claim, on which he is entitled to interest at the

rate of six per cent per annum from the date it became due.  As so computed, Meyer's interest item is $74.90.

Meyer's argument overlooks the fact that the amounts which he alleged Strom owed under the lease were not merely what Strom admitted ($1,704.81), but an amount in addition thereto.  Hence Meyer's total claim was unliquidated, even though Strom conceded that this much of it was proper.  The matters of the rent for drilling the Erickson well, the casing used in that well, and the hourly rental rate were all in dispute, in addition to Strom's counterclaim involving the Karr well.  Where the demand is for something which cannot be established without evidence regarding the quantity or amount of the thing furnished, interest will not be allowed prior to judgment.  *Wright v. Tacoma*, 87 Wash. 334, 151 Pac. 837.

The assignments of error relating to the disallowance of interest are not well taken.

The judgment is reversed and the cause remanded, with instruction to enter judgment for appellant as herein indicated.

ROBINSON, MALLERY, GRADY, and DONWORTH, JJ., concur.