WILLIAMS v. IDAHO POTATO STARCH CO.

No. 7812.

Supreme Court of Idaho.

June 11, 1952.

Rehearing Denied July 8, 1952.

Robert M. Kerr, Jr., Marion J. Callister, Blackfoot, for appellant.

J. H. Andersen, Blackfoot, Albaugh, Bloem, Barnard & Smith, Idaho Falls, for respondent.

THOMAS, Justice.

Appellant, a well drilling contractor, entered into a written contract with respondent, dated May 31, 1949, to drill a well on a designated site; the well was intended to supply water for a potato starch processing plant of respondent. At the time the contract was executed respondent made an advance of $1000 to appellant and it was agreed that respondent would pay appellant $12 per foot on the completion of the well, in accordance with the terms of the contract, the $1000 to apply upon such sum.

The contract provided that appellant would drill a hole "sufficiently straight to accommodate a ten inch pump at a sufficient depth below the water level to insure a continuous flow of water".

Appellant commenced work on the well on or about June 8, 1949, ultimately drilled a hole to a depth of 203 feet, and on or about March 1, 1950 ceased further work thereon, removed his equipment therefrom, and demanded payment of the balance of the contract price; respondent refused payment on the ground that the well was not sufficiently straight to accommodate a ten

inch pump at sufficient depth below the water level to insure a continuous flow of water; the hole was not straight and on several occasions during the drilling operations disagreement arose as to whether the well was sufficiently straight so that the pump might work therein.

Appellant thereafter and within the time provided by law filed a claim of lien, and thereafter initiated this action to foreclose such lien.

Respondent filed an answer and cross-complaint, in which it denies liability under the contract on the ground that the well did not comply with the terms of the contract because it was not sufficiently straight to accommodate a ten inch pump, and cross-complained for the recovery of damages for breach of the contract in the sum of $1923.85, which included the $1000 advanced to appellant.

The case was tried before the court, with a jury sitting in an advisory capacity. The court submitted two special interrogatories to the jury, both of which were answered in the negative; the first interrogatory submitted the question whether or not appellant substantially complied with, or was ready, willing and able, within a reasonable time, to comply with the terms of the written contract; the second interrogatory submitted for determination the question of whether the respondent suffered any damage on account of loss or damage to casing or cost of recovering casing

from the well because of the action of appellant.

The court made findings of fact and conclusions of law, and in so doing adopted the findings of the jury as to the special interrogatories, and found that the appellant failed to substantially comply with the terms of the contract, in that he failed to drill a well sufficiently straight to accommodate a ten inch pump of the type contemplated by the parties at a sufficient depth below the water level to insure a continuous flow of water; that the appellant was not entitled to any lien; that respondent did not accept the well, and that respondent was entitled to judgment for the $1000 which the court found was an advance and not a payment, together with interest thereon at the rate of six per cent per annum from the 31st day of May, 1949, together with costs, and judgment was accordingly entered. From this judgment the present appeal was taken.

Appellant makes numerous assignments of error. These respective assignments will be particularly treated as we proceed with the disposition of all matters presented for determination.

It is urged by appellant that the contract is clear and unambiguous in its terms and that the trial court erred in receiving, over objection, evidence of prior and contemporaneous negotiations between the parties, particularly with reference to the type of pump intended to be used in the well; it is insisted in this respect that the court

erred in permitting the respondent to introduce evidence that the contract contemplated a water lubricating pump, for the reason that the introduction of such evidence tends to vary, alter, or add to an unambiguous contract; on the other hand, it is the contention of respondent that while this general rule is conceded where a contract is clear and unambiguous, yet that it is equally well settled that where a contract is vague, uncertain, and ambiguous, it is proper to admit evidence of prior and contemporaneous oral negotiations between the parties in order that the true intent of the parties might be ascertained.

It is deemed advisable, in order to dispose of this assignment of error, to briefly review some of the evidence relating thereto. The appellant introduced evidence to the effect that he knew that the well was intended to furnish water for the processing of potatoes in a starch processing plant then under construction by respondent; under cross-examination he was queried as to whether or not the respondent had told him at the time the contract was made, the type and make of pump which had been purchased by respondent for use in the well. While he testified under cross-examination that he did not remember of any certain type of pump having been mentioned to him, there was no objection to this testimony; appellant, on direct examination, through one of his expert witnesses, brought out testimony that a pump for such a well as was involved in this case would have to be a turbine pump and that there were three types of turbine pumps; water lubricated, oil lubricated, and submersible; he further testified that an oil lubricated pump should not be used where the possibility of oil getting into the water might be a factor, and that if one was going to pump a lot of sand and abrasive materials, an oil lubricated pump would be favored over a water lubricated pump; he testified in great detail with reference to the three types of pump and how they operated in a well, and in this respect he testified that it was quite common in wells that are not straight to use an oil lubricated pump over a water lubricated pump, and gave his reasons therefor; he testified that he had on two occasions made an examination of this particular well and, upon re-direct examination, positively testified that he would hesitate to put a water lubricated pump in this particular well, giving his reasons, then testified further in this respect as follows: "As I said, I would guarantee to put a pump in there, but I wouldn't put a water lubricated pump in; I would put a submersible or oil lubricated pump in."

The contract refers to a pump, but makes no reference to what type of pump, if any, was in the contemplation of the parties; the appellant volunteered to introduce testimony that there were three types of pumps generally used in the vicinity; while the contract might have been clear on its face by the use of the general words "a ten inch pump", a matter

20

which it is not necessary to nor do we decide, this extrinsic evidence brought into the record by the appellant shows that there are at least three pumps, any one of which might properly have been in mind. Upon the admission of this testimony, an ambiguity arises.

Thereafter the court received evidence by respondent, over objection, to the effect that the parties had engaged in conversations during their negotiations with reference to this matter prior to the execution of the contract; that during these negotiations appellant was informed that respondent had received satisfactory service out of a Fairbanks-Morse Pomona Pump and that respondent was handling such pumps and was buying a Fairbanks-Morse Pomona water lubricating pump to be used in the well; that respondent at that time informed appellant that an oil lubricating pump would not be satisfactory because respondent did not want to take any chance of getting oil into and contaminating the water. It is this particular testimony that appellant strenuously urges constituted reversible error, asserting that it would operate to alter and modify the terms of a written contract which was clear and unambiguous on its face.

■■ Where a writing contains a reference to an object or thing, such as a pump, and it is shown by extrinsic evidence that there are two or more things or objects, such as pumps, to which it might properly apply, a latent ambiguity arises;

Queen Insurance Co. v. Meyer Milling Co., 8 Cir., 43 F.2d 885; Meinhardt v. White, 341 Mo. 446, 107 S.W.2d 1061; Hall v. Equitable Life Assurance Co. of the U. S., 295 Mich. 404, 295 N.W. 204; Zydel v. Clarkson, 29 Ohio App. 382, 163 N.E. 584; Koplin v. Franklin Fire Ins. Co., 158 Pa. Super. 301, 44 A.2d 877. See also 32 C.J.S., Evidence, § 961, page 917, and Jones on Evidence, 4th Ed., Vol. 4, Sec. 472, p. 902, wherein the general rule is recognized that parol evidence cannot be received to contradict, vary, add to or subtract from the terms of an unambiguous written agreement, but where it is also recognized that there are some well recognized exceptions to this rule which includes, as does this case, a situation where a latent ambiguity might not appear upon the face of the contract, but lies hidden in the subject to which it has reference: Where such ambiguity is thus disclosed by extrinsic evidence such as was disclosed by the appellant through his testimony, such ambiguity may be removed by the same means, that is, extrinsic evidence to show which type of pump the description related to. Jones on Evidence, 4th Ed., Vol. 4, Sec. 472, p. 902.

■ We hold that the court did not err in admitting evidence that the parties contemplated the use of a water lubricating pump in the well.

■ Appellant points out that the contract fixed no time for the completion of performance and urges that it was error for the court to permit, over objection, the ad-

mission of any evidence that the drilling rig was idle much of the time or to submit to the jury the issue of whether the well was completed within a reasonable time, or to make any finding thereon. There is no merit to this assignment of error, for the reason that where no time for performance is stated, the law implies a reasonable time. 20 Am.Jur., Sec. 1120, p. 978; 17 C.J.S., Contracts, § 503, p. 1063.

 Appellant's assignment of error No. 3 asserts that it was error for the court to refuse to permit the appellant to testify that, in accordance with custom and usage in the locality, a well was considered sufficiently straight for a pump to properly operate if the casing would go down in the hole without being forced. The record shows that the appellant did so testify, but upon motion the answer was stricken as a conclusion of the witness. The error, if any, arose by striking the answer. Thereafter, through several witnesses of appellant, testimony was adduced and is in the record to the effect that if the casing went down freely that it would accommodate the pump and the pump would operate satisfactorily; the appellant through such other witnesses not only developed the evidence that if the casing would go down the hole without binding or without being forced, the pump would properly operate therein, but also testimony that if the pump would go down into the casing without being forced it would satisfactorily operate and the hole would accommodate the pump.

Striking of such testimony, if it constituted error, would be harmless in view of the subsequent testimony introduced by appellant, which sufficiently covered the testimony attempted to be introduced thereby.

 It is urged that the court erred in refusing to allow appellant to examine a witness of respondent relative to certain provisions contained in a pamphlet of the American Water Works Association which the witness upon direct examination had relied upon as authority for the tests he made of the well; the testimony which appellant attempted to elicit under cross-examination from the witness was on the proposition of whether or not the pamphlet provided that the requirements of the Association's standard specifications for deep wells might, under certain circumstances, be waived; the contract did not provide for any waiver, and whether or not the respondent might have waived the standard specification requirements was not an issue in the case and any evidence in relation thereto would be wholly immaterial. The record shows that certain tests were made by respondent in November of 1949, and the well was rejected on the basis of those tests then made; later, and in January of 1950, certain scientific tests were made which are provided for in the pamphlet; the respondent apparently resorted to the scientific tests subsequent to the rejection of the well in order to lay a proper foundation for the admission of scientific testimony in the event litigation should follow its rejection,

and apparently for the additional purpose of satisfying itself that its basis for rejection of the well could be properly supported. It is fundamental that evidence, to be admissible, must relate to and be confined to the matter in issue. Whether or not standard specifications might be waived, would be the subject of agreement between the parties and there is no contention or proof in the record that any such agreement was had, in fact, it is manifest that none existed; such evidence would not tend to prove or disprove any material or controlling issue in the case; there is nothing in the issues presented to warrant such offered proof, and it was proper for the court to exclude it. 20 Am.Jur., Secs. 247–248, pp. 240–243.

After the appellant removed his equipment from the site, respondent engaged another well driller to drill a well for it. The appellant offered to prove that the specifications and the contract for this new well were entirely different than was contained in the contract in question, in that it was provided in the second contract that the well should be both straight and plumb, and that such proof was offered because it was material on the issue of good faith of respondent in rejecting the well; such offer of proof was rejected by the court, and the ruling of the court in this respect is assigned as error. It is apparent without further comment that such offered testimony is entirely outside the issues of the case and was properly rejected; the only issue in the case is whether or not the appellant substantially complied with the terms of the contract by drilling a well sufficiently straight to accommodate the ten inch pump, and such evidence would in no wise tend to prove or disprove this issue.

It is asserted that finding of fact No. 6 is insufficient to sustain the judgment for the reason that such finding is evasive, in that it cannot be determined therefrom whether or not the appellant failed to comply with the contract because the well wasn't sufficiently straight, or whether it was because it wasn't sufficiently deep, or because it wasn't completed within a reasonable time. Objections to the proposed findings were made and filed on March 15, 1951. The findings were filed on April 9, 1951. Finding No. 6 is as follows:

"That the plaintiff and cross-defendant failed to substantially comply with, nor was he ready, willing and able, within a reasonable time, to comply with the terms of the written contract between the parties, in that he failed to drill a well or hole sufficiently straight to accommodate a ten-inch pump of the type contemplated by the parties at a sufficient depth below the water lever to insure a continuous flow of water".

The important query is whether or not appellant failed to substantially comply with the contract on any particular ground. While the defendant made objection to the

proposed findings for reasons other than here urged, he made no request that the findings be amended nor did he suggest additional or more complete findings, although it is apparent a reasonable opportunity was afforded him to do so.

In this jurisdiction it is well settled that the failure of the trial court to find on an issue must be raised by the party aggrieved calling the matter to the attention of the trial court, either by requested finding, motion, or otherwise; that the error is waived, if any has been committed, by failure to do so. Koser v. Bohemian Breweries, 69 Idaho 33, 202 P.2d 398; Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370; Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009.

While the trial court must make findings of fact covering the material issues necessary to support a judgment, it is likewise the rule that the failure to find on all the issues of the case will not result in reversal of the judgment where the findings made by the trial court are inconsistent with the theory advanced by the appellant or presented by his pleadings, where such findings, standing alone, are sufficient to support the judgment. Again, there is a presumption that if findings are made inconsistent with the theory of appellant's case and with his allegations, if findings had been made thereon they would have been adverse to appellant. Koser v. Bohemian Breweries, supra; Naccarato v. Village of Priest River, supra; Nelson v.

Altizer, supra; Lingenfelter v. Eby, 68 Idaho 134, 190 P.2d 130; Arestizabal v. Arestizabal, 67 Idaho 492, 186 P.2d 218. The findings made by the trial court, while vague, are inconsistent with the theory advanced by the appellant and presented by his pleadings and are, standing alone, sufficient to support a judgment; furthermore, it will be presumed that if more definite findings had been made such findings would have been adverse to appellant.

Appellant urges that the findings of fact and the judgment entered by the court to the effect that appellant failed to substantially comply with the terms of the contract in that he failed to drill a well or hole sufficiently straight to accommodate a ten inch pump of the type contemplated by the parties is not supported by the evidence. It is clear from the evidence, and not disputed, that the hole was not straight; however, as to whether or not it was sufficiently straight to accommodate a ten inch water lubricating pump, the evidence is voluminous and in sharp conflict. Appellant introduced evidence that it was sufficiently straight to accommodate either an oil lubricating or a submersible pump. Respondent neither denied nor rebutted this evidence. Appellant submitted evidence that respondent insisted on a plumb hole; respondent denied this. No question with reference to plumbness was submitted to the jury and no finding thereon made by the court. It would serve no useful purpose to attempt

to detail the evidence in these respects. The findings made by the trier of the facts with reference to this matter are based upon and supported by substantial, competent although conflicting evidence. This court has uniformly held that findings made by the trier of the facts, supported by substantial, competent although conflicting evidence will not be disturbed on appeal. Sec. 13–219, Idaho Code; Driesbach v. Lynch, 71 Idaho 501, 234 P.2d 446; Yearsley v. City of Pocatello, 71 Idaho 347, 231 P.2d 743; Holland v. Beames, 71 Idaho 343, 231 P.2d 741; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347; Hancock v. Halliday, 70 Idaho 446, 220 P.2d 384; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345.

 It is contended by appellant that the court erred in allowing interest on the $1000 awarded respondent from May 31, 1949, the date respondent made the advance payment on the contract; it is asserted that no interest should be allowed prior to the date of entry of judgment.

Respondent, in its cross-complaint, seeks to recover damages for breach of the contract, in the aggregate sum of $1923.85, purportedly representing moneys paid out by it for material, labor and the use of a truck, as well as for spoiled casing, and the cost of pulling some casing, and the sum of $1000 advanced to appellant upon the execution of the contract. Respondent in its cross-complaint made no demand for interest.

It is to be noted that the various items claimed by respondent represent unliquidated damages for violation of and a failure to comply with the terms of the contract and do not represent moneys due on the contract. This court has recognized and applied the rule that where a claim is for unliquidated damages, the amount of which is not susceptible of ascertainment by computation or by reference to market values, interest will not be allowed prior to judgment. Storey & Fawcett v. Nampa & Meridian Irrig. Dist., 32 Idaho 713, 187 P. 946. This court has applied this rule where action is brought to recover unliquidated damages for breach of contract. Gridley v. Ross, 37 Idaho 693, 217 P. 989; Medling v. Seawell, 35 Idaho 333, 207 P. 137. We believe that it is appropriate to apply such rule in this case, but in so doing we do not overlook the fact that the item of $1000 was paid to appellant as an advance on the drilling and that the respondent agreed to pay the balance upon completion and acceptance of the well, as so provided in the contract. Even so, the total claim was for an unliquidated amount, and all the items therein set forth were in dispute and the demand was for something which could not, in any event, be established without evidence regarding the quantity and amount of labor and material furnished and material impaired or destroyed. Meyer v. Strom, 37 Wash.2d 818, 226 P.2d 218. We conclude that the court erred in allowing interest prior to the entry of judgment.

 Respondent's memorandum of costs was filed before the entry of findings.

and conclusions, and it is urged by appellant that because the memorandum was filed prematurely under the provisions of Sec. 12–113, I.C., costs are not properly allowable, and cites in support of his position Smith v. Faris-Kesl Const. Co., Ltd., 27 Idaho 407, 150 P. 25. The case of Smith v. Faris-Kesl Const. Co., supra, is distinguishable on its facts from the case now before us, for the reason that, although in that case the prevailing party prematurely filed his memorandum of costs, the matter was directed to the attention of the court by motion to strike, and it was stricken; there was no motion to strike in this case, or any motion to re-tax costs. Premature filing and service of a cost bill is regarded as a mere irregularity which is waived by the failure of the party charged with costs to make and file a motion to strike. See Combs v. Eberhard, 120 Cal.App. 25, 7 P.2d 338. We find no error in awarding costs to respondent.

We have carefully considered appellant's remaining assignments of error and do not consider that they raise any substantial questions in addition to those herein discussed and disposed of.

The judgment is modified to exclude the allowance of interest prior to the entry of judgment and as so modified is affirmed.

Costs to respondent.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.

On Petition for Rehearing.

GIVENS, C. J., and PORTER and TAYLOR, JJ., hold that no costs be allowed.

THOMAS and KEETON, JJ., hold costs should be awarded to appellant.

Except as to costs on appeal, all Justices concur and adhere to the conclusion reached in the opinion filed June 11, 1952.